R. L. BALLOU v. ROAD COMMISSION OF ASHE COUNTY.

(Filed 23 November, 1921.)

**Statutes—Bond Issues—Road Districts—Requirements of Statutes—Void Bonds—Municipal Boards.**

> Where there are provisions in the statute authorizing an issue of bonds by the road commissioners of a county, making it the duty of the commissioners either to begin the retirement of the bonds within five years or create a sinking fund for their retirement at maturity, and that interest on the bonds be paid annually, the commissioners issuing the bonds may not by contract or otherwise render ineffectual the power of future such

boards to exercise the discretion imposed on them by statute within the stated period; or in contradiction of the express provision of the statute, require the semiannual payment of the interest; and these statutory requirements reaching to the vitality of the bonds, their issuance otherwise will be declared invalid.

CLARK, C. J., concurring.

APPEAL by plaintiff from *Long, J.,* at chambers, 9 November, 1921, from ASHE.

Civil action, submitted on an agreed statement of facts, to determine the regularity of certain highway bonds of Ashe County.

The following facts, taken from the case agreed, will suffice for our present decision:

"1. That on 3 November, 1921, the defendant board passed a resolution authorizing the issuance of $365,000 highway bonds of Ashe County, under the authority of chapter 467, Public-Local Laws 1919, as amended 3 February, 1921, bearing interest at 6 per cent per annum, payable semiannually, with fixed serial maturities, providing in said resolution for a sinking fund for the payment of said bonds and determining that no bonds should be redeemed at the option of the county or any officer or board thereof before the date of such serial maturities, respectively, and directing the board's secretary, defendant herein, to advertise said bonds for sale upon sealed bids to be received 3 December, 1921, further providing that not only the bonds themselves but the advertisement of sale should specifically recite that said bonds would not be redeemable before said serial maturities.

"2. That all acts, conditions, and things required by the Constitution and laws of North Carolina in connection with the issuance of said bonds, up to and including the said authorizing resolution and direction to advertise, have happened, exist and have been performed except that the plaintiff and defendants are not agreed upon any one of these three questions, the defendants contending that said questions should be answered in the affirmative, and the plaintiff contending that they should be answered in the negative:

"(a) Whether said bonds will be within the debt limit?

"(b) Whether the county may irrevocably waive any right to redeem the bonds before their fixed maturities?

"(c) Whether the interest payments may be made semiannually?"

His Honor, being of opinion that all three of these questions should be answered in the affirmative, as contended by the defendants, entered judgment accordingly, and plaintiff appealed.

*Parke & Johnston for plaintiff.*
*W. R. Bauguess for defendants.*

STACY, J. We will omit any consideration of the first question, as we understand a negative answer to either the second or third inquiry will render it impracticable for the defendants to proceed further with a sale of the present bonds.

Chapter 467, Public-Local Laws 1919, under authority of which the bonds in question are to be issued, contains the following provision with respect to their payment: "It shall be the duty of said board of road commissioners, . . . not later than five years after the issue of said bonds, to begin, in the discretion of the board of road commissioners, the payment of said bonds or the creation of a sinking fund for the payment of the principal of said bonds at their maturities."

In the case of *Comrs. v. Bank,* 181 N. C., 347, speaking of this identical provision, it was said: "The present board cannot estop the option which, under the statute, they or their successors may exercise." To hold otherwise would be to allow the board of road commissioners to amend the statute and to issue bonds of a different kind and tenor than those contemplated by the Legislature. The authority to issue the proposed bonds is derived from the statute, and its limitations and conditions are equally as effective and curbing as its enabling provisions are life-giving. *Proctor v. Comrs., ante,* 56. Under these decisions we think the second question must, therefore, be answered in the negative, rather than in the affirmative.

Again, section 11 of the act under consideration provides that the interest coupons attached to said bonds shall be "payable annually"; and further, in section 12, "it shall be the duty of said board of road commissioners to pay the annual coupons on said bonds, at the time and place thereon fixed." Hence, under the express terms of the statute, we think the bonds should be issued with "annual" rather than "semiannual" interest coupons attached.

From the foregoing it follows that the second and third questions propounded must be answered in the negative, or in accordance with the plaintiff's contention; and this will be certified to the Superior Court.

Error.

CLARK, C. J., concurs entirely in all that is said in the opinion of the Court. But to "exclude a conclusion," thinks proper, as the statute is before us for construction, to call attention to the fact that so much of this statute as authorizes the levy of any tax on the poll for the payment of bonds issued "for the construction and maintenance of roads" is invalid, because in violation of an explicit provision in the State Constitution, which, as adopted in 1868, provides (Art. V, sec. 2): "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor, but in no one year

shall. more than .25 per cent thereof. be appropriated to the latter purpose." This provision of the Constitution remains unaltered.

When there. has been a .levy authorized for general purposes the validity of the poll tax is not necessarily brought in question because when collected presumably. the proceeds of the poll tax will be applied to the constitutional purposes to which it is restricted, i. e., "education and the poor." But the act before us is restricted to the specific purpose therein stressed, that. the whole of the tax levied is to be applied solely in the construction and maintenance of the roads. So much of the act as levies a poll tax for that purpose is therefore unconstitutional and invalid. This, however, can be struck from the act without impairing the validity of the property tax as has been held in several cases.

As we now have a declared legislative policy of incurring an indebtedness of $50,000,000 for the construction and maintenance of roads, it is well to note that however laudable such purpose may be, the Legislature is explicitly forbidden by the Constitution to derive any funds for that purpose from the collection of a poll tax.

There were formerly conflicting decisions, owing to the requirement of an "equation of taxation" between the poll and property tax, whether when the tax exceeded $66\frac{2}{3}$ cents on the $100 property valuation the poll tax could be collected to an amount in excess of $2, and whether such excess could then be applied to other purposes than "education and the support of the poor." These conflicting decisions have now ceased to have any bearing because under the Constitution as now amended the "equation of taxation" between the poll and property has been stricken out and the Constitution (Art. V, sec. 1) now reads: "The General Assembly may levy a .capitation tax on every male inhabitant of the State over 21 and under 50 years of age, which said tax shall not exceed $2 and cities and towns may levy a capitation tax which shall not exceed $1. *No other capitation tax shall be levied."*

. Section 2 of that article.of the Constitution, which provides that "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor," remains unaltered, and there can be no possible misunderstanding of the language of the Constitution which, as above quoted, says: "No other capitation tax shall be levied." It is also clear from this language that no capitation tax can be levied upon women, or upon men except from 21 to 50 years of age, and that so much of this or any statute as provides for the levy of any capitation tax for the maintenance and construction of roads is invalid and must be disregarded.