BOARD OF COMMISSIONERS OF WILKES COUNTY v. PRUDEN & CO.

(Filed 29 October, 1919.)

1. **Constitutional Law — Amendments — Roads and Highways — Counties— Bonds, Proceeds of Sale of—Local Legislation—Statutes.**

The Legislature, in 1915, authorized a certain county to issue bonds, declaring its purpose "to provide for a uniform, comprehensive, and practical system of roads in the county, calculated in a general way to serve the needs of every section," and for a wise, judicious, and equitable distribution of the funds so that each township and section of the county should be benefited to the advantage of the county as a whole. One-half of the bonds having been issued, and the proceeds found to be insufficient, and by the act of 1917, the amount authorized in 1915 having been reduced one-half, the Legislature in 1919 increased the issue to the amount authorized under the act of 1915, to carry out its spirit and intent, leaving its other provisions unchanged, but with the further provision that a certain part of the proceeds be applied to paying the expense of laying out and constructing a road in each township, the route or course thereof to be so laid as "to serve the best interests of the township." *Held*, the act of 1919 does not come within the inhibition of the recent amendment to the Constitution, Art. 2, sec. 29, as to the enactment of "any local, private, or special act authorizing the laying out, opening or discontinuing of highways."

2. **Same—Control of Funds.**

An act of the Legislature may prescribe a rule by which the proceeds of the sale of bonds it authorizes a county to issue for road purposes, shall be disbursed and distributed in order to effect the best results, when it is confined to the control and management of the funds, and leaves to the local authorities the power given them by the recent constitutional amendment over "the laying out, opening, or discontinuance of highways."

3. **Statutes— Repeal— Reenactment— Counties — Bonds — Roads and Highways.**

The act of 1919, relating to Wilkes County, reenacting and continuing in force the provisions of the act of 1915, restoring the authority to issue the amount of bonds for county road purposes, after it had been reduced by the act of 1917, was intended to enforce the will of the Legislature expressed in the act of 1915, by supplying the means and facilities, in the way of necessary funds, for doing so.

CIVIL ACTION, tried before *Webb, J.,* upon a case agreed, in the Superior Court of WILKES, 27 May, 1919.

The action was brought to test the validity of certain bonds, to the amount of two hundred and seventy-five thousand dollars, which have been issued, and contracted to be sold to defendants, by the county of Wilkes, for the purpose of constructing public roads in the said county. Public Local Laws 1915, ch. 345, authorized that county to issue bonds to an amount not exceeding five hundred thousand dollars for the pur-

pose of "grading, building, and constructing public roads there, . . . and otherwise improving and maintaining the same." The act declares, in sections 19 and 20, its object to be "to provide for a uniform, comprehensive, and practical system of goods roads in the county, calculated, in a general way, to serve the needs of every section thereof," and then further provides for a wise, judicious, and equitable distribution of the funds derived from a sale of the bonds, so that each township and section of the county will be benefited, and in such a way as will be advantageous to the county as a whole. The bonds were issued and sold to the amount of two hundred and fifty thousand dollars, but this fund proved to be insufficient to carry out the scheme as to roads contemplated by the act, resulting from the sudden and large increase in the cost of labor and material necessary for the purpose, which undertaking was to be executed by the good roads commission appointed by the act. That body has since had complete control of the county's road system.

By chapter 63, Public Local Laws 1917, the act of 1915 was amended by reducing the amount of bonds authorized thereby from $500,000 to $250,000, and validating the previous issue of $250,000 in all respects. Section 3 of the act of 1917 provides: "That except as herein amended, the said chapter three hundred and forty-five of the Public-Local Laws of nineteen hundred and fifteen shall remain in full force and effect."

Public-Local Laws 1919, ch. 451, increased the bond issue of 1915, as reduced in 1917, and authorized an issue of $250,000 in bonds to complete the public roads of Wilkes County, as the proceeds from the former issue of $250,000 had proved insufficient for that purpose. That act provides that the proceeds of the bonds last authorized shall be distributed among the townships of the county, so as to carry out the spirit and intent of the act of 1915, that each section shall receive its proportionate share, and in order to accomplish this purpose it is further provided that a certain amount (naming it) shall be applied to paying the expense of laying out and constructing a road in each township, the route or course of the road to be determined by the commission, so as "to serve the best interests of the townships."

Public-Local Laws 1919, ch. 443, provides for the issue of $25,000 in bonds for the completion of the Boone Trail Highway to the line of Watauga County. There were other provisions in the acts just mentioned which need not be set out, as they are not material to the case and the question presented by it.

The commissioners have contracted with the defendants to sell the bonds for $275,000, authorized by both acts of 1919, to them, at a sum agreed upon, and have brought this action to recover the stipulated price. Defendants refused to pay because they allege that the bonds are invalid.

Judge Webb was of the opinion, and so held, that the bonds are valid, and gave judgment for the plaintiff. Defendants appealed.

*Joseph M. Prevette and Hayes & Jones for plaintiff.*
*C. N. Malone and J. W. Hinsdale for defendants.*

WALKER, J., after stating the facts, as above: The particular contention of the defendant is that the acts of 1919 are in violation of the Constitution, Art. II, sec. 29, which prohibits the enactment of "any local, private, or special act . . . authorizing the laying out, opening, altering, or discontinuing of highways," but we are of the opinion that this is a misconception of the object and purpose of those laws. It was not intended to require the local authorities to lay out, open, alter, or discontinue any road or highway, but they were passed by the Legislature for the purpose of enabling the local authorities designated in them to issue bonds, and out of the proceeds to pay the expense of constructing roads in the various townships of the county, in order, by special directions, to complete the scheme of road building which was authorized by Public-Local Laws 1915, ch. 345, and this will be apparent to any one who will read the four acts together. The exact location of the roads was left to the good judgment and discretion of the local authorities named in the acts, but in order to equalize the benefits to accrue to each and every part of the county, the Legislature considered it wise and expedient that the money raised by a sale of the bonds should be distributed upon some fixed basis, or according to a fixed rule, so that this equal apportionment might be the better enforced. It was not passing laws to lay out or construct roads, but to pay for these things by issuing and selling bonds, just as was done in *Brown v. Comrs.,* 173 N. C., 598. There is no prohibition in our Constitution, not even since the amendments of 1916-17 were ratified, which prevents the Legislature from passing an act to pay for the construction of roads in the manner prescribed in these statutes. The Court, in *People v. Banks,* 67 N. Y., 568, interpreting a provision of the Constitution of that State, which is similar to Art. II, sec. 29, of our Constitution, with reference to a statute containing language not substantially unlike that in the statutes under consideration, said: "The act under review does not in any of its provisions provide for the altering, opening, or working of a highway in the sense in which those terms were used in the statutes of the State regulating highways and public roads, or the constitutional provisions now invoked. Grading, paving, sewering, and ornamenting were even provided for in this act, since it could not be done by general law." It was held to be within the discretion of the Legislature. See, also, *Mills v. Comrs.,* 175 N. C., 215; *S. v. Lytton,* 9 Pac. Rep., 855.

The general road system of Wilkes County was established by the act of 1915, passed before the constitutional amendments of 1916-17 were ratified and took effect, and the statutes in question only provided the means whereby the roads could be constructed and maintained in the most rational and equitable way for the general benefit of the county, and to this end the Legislature authorized the issue of bonds to raise a fund of $275,000, and required that it should be so apportioned to the different sections of the county as to give each one its fair share of the benefit to accrue. The framers of the Constitution certainly did not intend to withhold their sanction from so beneficial a scheme for road improvement. As said in *Brown v. Comrs., supra:* "Such provisions are construed not to destroy or weaken the power of the General Assembly in its necessary control over the subordinate divisions of the State Government, but to prevent cumbering the statute books with a mass of purely private and local legislation." The *Brown case* has been approved in *Mills v. Comrs., supra; Parvin v. Comrs.,* 177 N. C., 508, and at the present term, in *Martin County v. Wachovia Bank & Trust Co.,* and *Surry County v. same defendant.* What is held in the *Mills case* is peculiarly applicable to the facts now before us, and upon which we are asked to decide as to the validity of these bonds. It was said there: "It is well understood that our General Assembly, at session after session, was called on by direct legislation to authorize a particular highway or street, or to establish a bridge or ferry at some specified place. . . . The Legislature, in these cases, was in fact called upon to usurp, or rather to exercise, functions which were more usually and properly performed by the local authorities, and it was in reference to local and special and private measures of this character that these amendments were adopted; and, as stated in *Brown's case, supra,* it was never intended to prohibit legislation authorizing the raising of proper funds by the sale of bonds, or by taxation, for measures required for the public good, though such funds should be for improvements in some fixed place or in restricted territory determined upon by local authorities in pursuance of general laws on the subject." And the language of the Court in *Brown's case, supra,* is equally and directly pertinent. Speaking of a statute somewhat similar to those upon which we are passing, and of the plain object of the law, the Court said: "An analysis of the act shows that its primary purpose is to authorize the sale of bonds for road purposes in North Cove Township, and to require the levying of a tax to pay the interest and principal of the bonds. . . . It only provides the means for constructing and repairing them. . . . Speaking of such legislation as affected by a constitutional provision, . . . the Pennsylvania Court, *In re Sugar Notch Borough,* 192 Pa. St., 349; 43 Atl., 985, says: 'The restrictions of the Constitution upon legislation

apply to direct legislation, not to the incidental operation of statutes, constitutional in themselves, upon other subjects than with those with which they directly deal.' So, in this case, the bond issue being the direct legislation, the fact that it provides that the proceeds of the bonds are to be used for road purposes will not bring it within the prohibition of the constitutional amendment." Numerous cases are cited in *Martin County v. Wachovia Bank & Trust Co.* to the same effect.

If the Legislature may provide a fund necessary to lay out and construct roads, we are unable to perceive why it may not also prescribe the rule by which that fund shall be disbursed and distributed in order to effect the best results, when it confines itself, as it has done in this instance, to the control and management of the fund, and does not essay to have done any of the acts prohibited by Art. II, sec. 29, of the Constitution, but leaves these things to be performed by the local authorities in the due exercise of their proper functions. What we have said applies as well to the bonds for $25,000, issued to construct or complete the Boone Trail Highway.

There was one other question presented originally in the case, as to whether the ten per cent clause of the "Revaluation Act of 1919" would apply to the bonds for $275,000 issued under the acts of 1919, and upon the validity of which we are passing. We understand from the appellant's brief that this question has been withdrawn from our consideration, and we, therefore, do not further refer to it.

We have stated fully the provisions of the statute of 1915, not only because it was enacted before the adoption of the amendments of 1916-17, which took effect on 10 January, 1917 (*Reade v. City of Durham,* 173 N. C., 668), but also because it has been recognized by the act of 1917, amending it, and by the act of 1919, as having always been in force since it was passed, save and except as it was amended by the act of 1917, reducing the amount of the bond issue. The acts of 1919 were intended merely to enforce the will of the Legislature as expressed in the prior statute of 1915, by supplying the means and facilities for doing so.

The result is that the bonds in question are valid obligations of Wilkes County, and there was no error in the judgment of the court to this effect upon the case agreed.

Affirmed.