ROAD COMMISSIONERS OF ASHE COUNTY v. BANK OF ASHE ET AL.

(Filed 11 May, 1921.)

**1. Constitutional Law—Statutes—Local Law—Road Districts—Counties.**

A public-local act incorporating road commissioners of a county, and giving them the powers, rights, duty and authority, as to the highways of that county, etc., that were formerly held by the county commissioners, does not contravene sec. 29, Art. II, of the State Constitution. in depriving the board of county commissioners of certain powers relating to the public roads therein.

**2. Same—Bonds.**

An act of the Legislature authorizing the road commissioners of a county to issue bonds, upon the approval of its electors, to obtain moneys for the expenditure upon certain particularly designated objects in respect to its public roads, and which does not contain any provision for the laying out, altering or discontinuing any road or highway, does not contravene Art. II, sec. 29, of our State Constitution, prohibiting the Legislature from passing local, private or special act relating to the subject.

**3. Same—Limitation of Issuance of Bonds in Series.**

Municipal or district bonds for road purposes may be issued in the judgment of the proper authorities as and when needed, when the statute under which they are issued impose no limitation thereon, except as to the total amount, by requiring that it should not exceed a certain per cent of the assessed property valuation of the district.

**4. Same—Notice to Purchasers of Bonds.**

Where the proper authorities are given, under the statute, discretion to issue road bonds for a district as and when needed, not exceeding an amount to be ascertained according to a percentage of the assessed property valuation of the district, a provision in the order for issuing the bonds, that it was the first to be made, is notice that other bonds under the same power would thereafter be issued.

**5. Constitutional Law — Road Districts—Counties—Municipal Corporations—Statutes—Amendments to Statutes—Elections.**

An amendment to a former act authorizing a road district to issue bonds for road purposes upon the approval of the electors, which imposes additional expenditures and reduces the amount of the bonds to be issued, and is silent as to another election on the question, restores the authority of the former act, and the purchasers of the bonds may not successfully maintain that another election is essential to the validity of the bonds.

**6. Same—Necessary Expenses.**

The expenditure of moneys by a road district for its roads is for necessary purposes, and where bonds are authorized by statute to be issued with the approval of the electors of the district, an amendment to the act, which is silent upon the question of holding another election, cannot be construed to require it.

**7. Elections—Polling Places—Electors—Presumptions—Notice.**

Where polling places in each township of a road district have been established for a long time and are regarded as permanent, it will be presumed that each voter within the district knew where he should register and vote on the question of bonds, and where the notice of the election complied with the law except designating the exact location of these well-known polling places, the election will not be declared invalid solely on that account.

**8. Municipal Corporations — Bonds — Maturity of Bonds — Statutes— Notice—Contracts.**

A purchaser of municipal bonds, having a definite time fixed for their maturity, purchases with notice of the provisions of a statute authorizing their issuance, permitting the obligor to pay thereon within five years, or create a sinking fund, and he is bound by his contract: *Semble*, this question is only academic.

APPEAL by defendants from *Webb, J.*, at April Term, 1921, of ASHE. This was a controversy without action. It appears from the case agreed that the plaintiff issued $300,000 road bonds, fixing the dates of maturity, for which the defendants agreed to pay par and accrued interest and a premium of $500. The plaintiff was incorporated, Public-

Local Laws 1919, ch. 467, and was vested with the powers, rights, duties and authority of the board of county commissioners with respect to the public roads of Ashe County, and was authorized to construct a system of highways for said county. By virtue of an election under said act, it was authorized to issue bonds not exceeding 15 per cent of the assessed valuation of property. Pursuant to said act, and under authority of said election, the plaintiffs issued and sold, on 6 May, 1919, $200,000 of road bonds. The personnel of the plaintiff board was increased by the act of 1921 which directed the construction of certain additional roads in the county and certain other disbursements; the 1921 act had been ratified after the entire issue of $200,000 previously sold had been expended and much more than that amount had been obligated upon contracts for the construction of said system of highways. Subsequent to the act of 1921, the plaintiff sold said $300,000 bonds now in controversy, said act of 1921 having limited the issuance of bonds to 5 per cent of the assessed valuation of property instead of 15 per cent, and it appears from the agreed statement of facts that under the said limitation a total of more than $865,000 could be assessed as authorized, and that there still remains a margin of $365,000 without exceeding the statutory limitation. The defendants refuse to receive and pay for the bonds upon the ground that they question the validity of the $300,000 issue.

The court entered judgment that the $300,000 bonds are in all respects a valid and binding obligation of the county of Ashe, and are not subject to recall and payment before the dates of their maturity, which were made absolute by the action of the plaintiff board.

*W. R. Bauguess for plaintiff.*
*G. L. Park for defendants.*

CLARK, C. J. The first objection of the defendants is to the constitutionality of ch. 467, Public-Local Laws 1919, which they claim violates sec. 29, Art. II, because it deprives the board of county commissioners of certain powers relating to the control of public roads; and their second objection raises the same point as to the amendatory act ratified 3 February, 1921, entitled "An act to amend the public road law of Ashe County, ch. 467, Public-Local Laws 1919," and also on the ground that it contravenes the section of the Constitution above cited and deprives the county commissioners of the exercise of such powers, and directs the expenditure of the fund upon certain particularly designed objects.

Both these questions have been considered and settled by repeated decisions of this Court. Chapter 467, Public-Local Laws 1919, contains

no provision for the laying out, opening, altering or discontinuing any road or highway. The object of the act was to provide funds with which to build a system of highways for the county, creating a road commission to execute and supervise the details of constructing such system. The amendatory act of 1921, extending the powers of the road commission, directs the completion and construction of certain roads, and directs certain townships to be paid sums not exceeding amounts therein stated, to be used in connecting the townships with the county system. Neither of said acts contain any provision as to the laying out, opening, altering or discontinuing any road or highway, but merely provides the machinery for executing such work. The location of the roads is left to the judgment of the road commission. The provision of the Legislature for the application of the money arising from the sale of the bonds was clearly that the money "Should be distributed upon some fixed basis or according to a fixed rule, so that this equal apportionment might be better enforced." *Brown v. Comrs.,* 173 N. C., 598.

In *Mills v. Comrs.,* 175 N. C., 215, it is said, quoting *Brown v. Comrs.,* "It was never intended to prohibit legislation authorizing the raising of proper funds by the sale of bonds or by taxation for measures required for the public good, though such funds should be for improvements in some fixed place or in restricted territory determined upon by local authorities in pursuance of general laws on the subject." In the *Brown case* it was also held: "It is impossible to conceive that the purpose of the amendment was to deprive the General Assembly of the power absolutely necessary to aid counties and townships in the construction and repair of their public roads. The framers of the amendment no doubt intended to leave intact the long recognized and statutory power of the Legislature to supervise and control the financial affairs of the municipalities of the State." In *Comrs. v. Pruden,* 178 N. C., 394, the Legislature had authorized a certain bond issue and directed the expenditure upon certain designated projects, and it was held that the statute "only provided the means whereby the roads could be constructed and maintained in the most rational and equitable way for the general benefit of the county, and to this end the Legislature authorized the issue of bonds to raise the fund of $275,000, and required that it should be so appropriated to the different sections of the county as to give each one its fair share of the benefit to accrue. The framers of the Constitution certainly did not intend to withhold their sanction from so beneficial a scheme for road improvement."

This Court has repeatedly upheld acts incorporating boards of road commissioners, vesting in them the power to issue bonds and giving them full control over the construction, maintenance, laying out, alter-

ing, and discontinuing of roads and highways.  *Comrs. v. Comrs.,* 165 N. C., 632, citing numerous cases, saying, "The Legislature has the authority to create a board of road commissioners and vest them with the authority over the roads that the county commissioners had theretofore possessed, quoting *Trustees v. Webb,* 155 N. C., 383, to the same effect, and saying that "the jurisdiction of the road commissioners in these matters is subject to regulation, in the discretion of the Legislature."

In *Hargrave v. Comrs.,* 168 N. C., 626, the Court held that the construction and maintenance of public roads are necessary public expenses, and that "the General Assembly may provide for construction and working the same, and may create a board to do this, distinct from the county commissioners," holding that all such matters are under the control of the Legislature.

The defendants' third contention is that the road commissioners are without authority to issue the bonds without a new election.   It appears from the agreed case that an election was duly called.   The order for the election stated that the vote was to be taken upon the issue of bonds as provided by chapter 476, Public-Local Laws 1919.   Chapter 10 of said act provides that in the event that a majority of the votes cast at such election should be "for good roads," the commissioners, at their next meeting, shall proceed to carry out the wishes of the people as expressed in such election, and with as little delay as possible shall issue the bonds in such denominations and of such class and for such term as may be deemed best by said road commission.   Section 9 provides: "Bonds may and shall be executed by the board of good roads commissioners, . . . provided that the maximum amount of bonds issued, together with all bonds previously issued and remaining unpaid by said county shall not exceed 15 per cent of the assessed valuation of the county." This gave the commissioners discretionary powers in the issuance and sale of bonds, but limited the maximum amount.   There was no requirement that all the bonds should be issued at once, or in one series, or that all the bonds should be sold at once, for the commissioners did not know what amount would be needed to complete the system of roads required, and a great loss in interest might be incurred by issuing more than was necessary at any one time.   The limitation being fixed by percentage on the assessed valuation, the only restriction was as to the limitation, leaving the amounts and times of issuance discretionary with the plaintiff board.   The plaintiff board, in its order of bond issue, 6 May, 1919, provided:   "This is the first issue of bonds under authority of said election; said election authorizing the issuance of such amounts as may be necessary, not exceeding 15 per cent of the assessed valuation." This gave notice that the board would issue on further series, and at that time contemplated an additional issue or series.

It is not unusual to fix the limit of indebtedness by bond issues by municipal corporations by a prescribed percentage of the assessed valuation. In 19 R. C. L., 978, it is held that "when the Constitution provides that the indebtedness of a municipal corporation shall not exceed a certain percentage of its total assessed valuation, the last assessment prior to the incurrence of the indebtedness is taken as a test; and even where the validity of the indebtedness is made to depend upon the assent of the voters, it is the assessment prior to the incurrence of the indebtedness and not an assessment prior to the election that is taken into consideration. Such provisions do not prevent the incurring of a new indebtedness if the total of indebtedness, old and new, does not at any time exceed the limit." In 28 Cyc., 1600, it is said: "A statute providing that municipal officers shall issue bonds within a certain number of days after an election authorizing such issue does not imply that they may not issue them after the time specified; and the fact that municipal bonds were not issued until nearly two years after the passage of an ordinance making a provision for their payment does not invalidate them."

In this case, even if the authority to issue bonds within a time prescribed had passed, the act of 1921 would restore the authority. Taking into consideration the increase in the valuation of property since the election was held on 19 April, 1919, the Legislature, by the act of 1921, amending the previous act, restricted the totality of the bonds to 5 per cent of the assessed valuation for 1920 instead of 15 per cent.

The defendants contend, however, that even if the authority was restored by the act of 1921 that the Legislature in the latter act contemplated another election to be held after its passage, but there is no reference to any election, and the act limits the amount of bonds rather than extends it. At the date of the ratification of the act of 1921 all of the first issue of $200,000 bonds had been expended, and the work contracted for required as much more. Knowing that there were no funds in the hands of the road commissioners with which to carry on the work of completing the system of highways, the Legislature directed that certain additional roads be constructed as a part of the county system, and that certain sums be paid to certain townships for township purposes. The commissioners are commanded to extend the work, thus increasing the indebtedness to complete the system of roads provided for in the act of 1919. This being a necessary expense, the county commissioners were authorized to incur it even if the authority under the original act had ceased, and should the act of 1921 not restore such authority, if already lapsed, it would have been necessary to issue the additional bonds to carry out the mandate of the Legislature as was held in *Bradshaw v. High Point,* 151 N. C., 517, and *Smathers v.*

*Comrs.,* 125 N. C., 480, and other cases. The commissioners would be authorized to issue bonds to complete the system of roads for the county being authorized to incur indebtedness in the construction of a certain system of roads, this being a necessary expense authorized by the statute and by the popular vote.

The fifth objection of the defendants is that under the authority of *Comrs. v. Trust Co.,* 164 N. C., 301, the names of the voting places in every precinct or township must be given. Chapter 467, Public-Local Laws 1919, provides that "the election shall be held in the same manner as prescribed by law for holding elections for the General Assembly." In the agreed case it is stated that the polling places in every township were well known to all electors, and that there is only one polling place in every township or precinct. The order for the election contained the following notice: "The registry books of the various townships in the county shall be open 29 March, 1919, for the registration of the electors of the county, to remain open as required by law for the registration of the electors for the election of representatives to the General Assembly." This was followed by the names of all the townships, giving the names of the registrars and judges in each for the respective townships. It is admitted that these polling places were fixed and permanent and well known, and that the election was held under the general laws which could be changed only according to C. S., 5926, after due inquiry and notice fully given. The presumption is that each elector knew where the polling place was in the precinct in which he was entitled to vote.

The sixth exception is that though the dates of the maturity of the bonds were fixed, yet under the provisions of the statute the commissioners may within five years after the issuance of the bonds begin their payment, or the creation of a sinking fund, for the payment of the principal at maturity. The defendants admit in their answer that this provision in no wise affects the validity of the bonds, and as they agreed to take them knowing of this option on the part of the debtor to begin payment within five years, they cannot be heard in repudiation of their agreement to take the bonds. The present board cannot estop the option which, under the statute, they or their successors may exercise. The probability of the payment of bonds before maturity by a progressive community constantly needing funds for public improvements is so remote as to relegate this objection as an almost purely academic question.

We think that the $300,000 of bonds for which the defendants contracted were legally issued under authority of law, and of an election properly held, and are in all respects valid and binding obligations of the county of Ashe.

Affirmed.