IN RE SHERRILL HARRIS.

(Filed 2 June, 1922.)

**1. Constitutional Law—Ambiguity—Local Laws—Courts—Statutes—General Statutes—Inferior Courts.**

The amendment of our State Constitution, effective 10 January, 1917, now appearing as Article II, section 29, of the Constitution, among other things, prohibiting "local, private, or special legislation relating to the establishment of courts inferior to the Supreme Court," etc., must be defined by reference to the context and existing conditions, and is sufficiently ambiguous to admit of interpretation; and as applied to the establishment of recorders' courts, the court will take cognizance of the efficiency and the number of such courts theretofore existent; and the more recent statutes under which other such courts have been added, and at the time of the enactment of the original statute affecting the question there were 56 counties in the State within which they have been established, with only 44 counties to the contrary, in determining whether an amendment to a recent statute permitting several additional counties to establish them comes within the constitutional inhibition as a local law.

**2. Same—Presumptions.**

The interpretation of a statute, as to whether it is a local one, prohibited by Article II, section 29, of our Constitution, under the recent amendment, should be largely left to the facts and circumstances of each particular case, giving significance to the rule that legislative acts are presumed to have been rightfully passed from proper motives, and that a classification of this kind, when made by them, should not be disturbed unless it is manifestly arbitrary and invalid.

**3. Same—Amended Statutes.**

A general law permitting the establishment of recorder's courts in the State, excepting certain counties to the number of 44, leaving 56 within the provisions of the statute, is not a local law within the intent and meaning of Article II, section 29, of our Constitution (a recent amendment), nor is a late statute amending the former general law taking a

certain county and two others out of the excepted class enumerated in the general statutes, unconstitutional as a local or special act as to those counties, the effect of this statute being a reënactment of the general law including the particular counties.

CLARK, C. J., concurs in result.

APPEAL by defendant from *Long, J.,* in *habeas corpus* proceedings instituted and heard before him at chambers, 18 April, 1922, from IREDELL.

Cause presented on writ of *certiorari,* duly issued from this Court, to review a decision of Long, J., on petition of Sherrill Harris.

From perusal of the record, it appears that under C. S., ch. 27, subch. 4, as amended by Laws 1921, ch. 110, a recorder's court was established for Iredell County. Acting under provisions of said law and the jurisdiction thereby conferred, defendant was, on 27 February, 1922, convicted of the criminal offense of selling spirituous liquor and sentenced to imprisonment for a term of six months and assigned to work on the roads, etc., during said term, without felon stripes. That, being held under said sentence, the defendant filed his petition for *habeas corpus* before his Honor, B. F. Long, resident judge, Fifteenth Judicial District, on the alleged ground that the judgment against him was illegal and void. Chiefly for the reason that the act providing for the establishment of said court and conferring jurisdiction thereon, was in violation of Article II, section 29, of the Constitution prohibiting local, private, or special legislation in various matters therein specified, and including acts relating to the establishment of courts inferior to the Supreme Court. On the hearing, his Honor being of opinion that the act was in all respects constitutional and valid, entered judgment in denial of plaintiff's application, and he was remanded to custody and is now held under said sentence of the recorder's court. Thereupon said petitioner applied for and obtained this writ of *certiorari,* on petition, and which was duly filed and served for the purpose, as stated, of reviewing the adverse judgment in *habeas corpus* proceedings, and the validity of the sentence under which the petitioner is being detained.

*Zeb V. Turlington for petitioner.*

*W. D. Turner, Long & Jurney, Lewis & Lewis, and Grier & Grier for respondent.*

HOKE, J. In the fall of 1916 there were several amendments made to our Constitution, becoming effective 10 January, 1917. *Reade v. Durham,* 173 N. C., 668; *Mills v. Comrs.,* 175 N. C., 215. Among these amendments, appearing chiefly in Article II, section 29, there is an

inhibition against passing "local, private, or special act or resolution relating to the establishment of courts inferior to the Supreme Court, authorizing the laying out, opening, altering, or discontinuing of highways, streets, or alleys; relating to ferries or bridges," etc. After the adoption of these amendments, the General Assembly, in 1919, chapter 277, the same being entitled "An act to establish a uniform system of recorders' courts for municipalities and counties in the State," provided for the establishment of such courts, and in section 64 exempted from the effect and operation of the law 10th, 18th, 19th, and 20th Judicial districts, and the 11th Judicial District, except Caswell County, and ten additional counties, by name: Anson, Chatham, and eight others, the exemption now appearing in C. S., 1608. Later, in ch. 110, Laws 1921, some amendments were made to the general statute, and Iredell and Granville and Cherokee counties were withdrawn from the excepted cases and brought within the provisions of the general law, the result being that the general statute applied to about 56 counties in the State, and 44 were excepted from its provisions, and it is contended by the petitioner that the statute under which the court has been established is a "local and special law" within the meaning of the constitutional inhibition. In *Mills v. Comrs.*, 175 N. C., 215, a statute authorizing the commissioners of Iredell and Catawba counties to provide for building bridges over the Catawba River, which had been washed away by a recent flood, was challenged as being in violation of the constitutional provision, and speaking to the meaning of the word "local" as contained in the amendments, the Court, among other things, said: "It is said in some of the decisions on the subject that the significance of the term 'local' in constitutional provisions of this character is comparatively of recent use and importance, and has received no fixed or generally recognized meaning. Like other legislation or written instruments sufficiently ambiguous to permit of construction, it must be defined by reference to the context, the purpose appearing in the terms of the law and the attendant circumstances relevant to its true interpretation. In Lewis' Southerland Statutory Construction it is said (2 ed., sec. 199, p. 358) 'That special laws are those made for individual cases. . . . Local laws are special as to place'; and further (at sec. 200): 'It seems impossible to fix any definite rule by which to solve the question whether a law is local or general, and it has been found expedient to leave the matter, to a considerable extent, open, to be determined upon the special circumstances of each case."

A position that is in accord with the comments as to the meaning of the word "local" appearing in *Gray v. Taylor et al.*, 227 U. S., 51. And in further reference to the amendments it was said: "It is well understood that our General Assembly, at session after session, was called on

by direct legislation to authorize a particular highway or street, or to establish a bridge or ferry at some specified place. Such questions being not infrequently at the instance of rival parties or opposing interests, were urged and debated with great earnestness by their respective advocates and renewed and protracted to such an extent that they were of serious detriment to the public interests, and, at times, prevented full and proper consideration of vital public measures. The Legislature, in these cases, was in fact called on to usurp, or rather to exercise, functions which were more usually and properly performed by the local authorities, and it was in reference to local' and special and private measures of this character. that these amendments were adopted, and, as stated in *Brown's case, supra,* it was never intended to prohibit legislation authorizing the raising of proper funds by the sale of bonds or by taxation for measures required for the public good, though such funds should be for the improvements in some fixed place or in restricted territory, determined upon by local authorities in pursuance of general laws on the subject." This principle of interpretation as to the meaning of these amendments had been previously announced in *Brown v. Comrs.,* 173 N. C., 598, and has been approved since in several decisions of the Court where the subject was directly and fully considered. *Huneycutt v. Comrs.,* 182 N. C., 319; *Comrs. v. Bank,* 181 N. C., 347; *Comrs. v. Pruden,* 178 N. C., 394; *Martin County v. Trust Co.,* 178 N. C., 27; *Parvin v. Comrs.,* 177 N. C., 508. In *Huneycutt's case, supra, Associate Justice Stacy,* for the Court, said: "Thus it will be seen that the purpose of the act in question was not to authorize the laying out, opening, altering, or discontinuing of any given road or highway, but to provide ways and means by which the general road work of the entire county might be successfully carried on and maintained. The two highway commissions hitherto existing in the county were to be abolished and one new central system established. It has been held with us in a number of cases that acts of this character do not fall within the constitutional prohibition against local or private legislation."

Under these decisions and the construction they uphold as to the true intent and meaning of these amendments, the statute in question would seem to be a valid law, and this, in our opinion, is undoubtedly true when it is considered that the statute is designed and intended to provide for as many as 56 out of the 100 counties of the State, and could in no sense be regarded as a local or special law within any usual or ordinary meaning of these terms. It is well known that at the time this law was enacted there were 20 or 25 of these recorders' courts already established and doing satisfactory work, and in the remaining excepted counties it was estimated that the regular courts were then so fixed in time and number as to afford adequate facilities for the administration of public justice in those counties. It is always presumed that a Legislature acts

rightly and from proper motives, and a classification of this kind, when made by them, should not be disturbed unless it is manifestly arbitrary and invalid. 25 R. C. L., p. 815, sec. 66.

As applied to the facts of the record, we think the correct general position is stated in *People, ex rel., v. The Newburgh Plank Road Co. et al.,* 86 N. Y., 117, as follows: "A local act is one operating only in a limited territory or specified locality. It could not be said with propriety that a territory comprising nearly the whole State was merely a place or locality. An act operating upon persons or property in a single city or county, or in two or three counties, would be local. But how far must its operation be extended before it ceases to be local? To determine this, no definite rule can be laid down, but each case must depend upon its own circumstances." The same case is authority for the position "that a general act does not cease to be general because an amendment bringing one or more additional counties under its provisions, but the act, as amended, continues to be a general act," and for the purposes now presented may be treated as if reënacted in its amended form. There are various decisions on this subject which appear to conflict, and some of them which do conflict with the disposition we have made of the present appeal. In some of them the courts were construing a Constitution which was much more specific in defining the term local than in the clause presented here, as in *State ex rel. Attorney-General v. Sayre, as Judge, etc.,* 142 Ala., 641, where a local law is expressly defined to be "any political division or subdivision of the State less than the whole." In others, an act in general terms contained a provision that the same should apply only to one or more counties, not designated expressly by name, but so described as to be clearly indicated, a palpable attempt to evade the constitutional restriction. Again, acts applying to the State at large, and excepting one or more counties, has been held local, because it is considered as legislation affecting the excepted counties. Although many of the decisions referred to might thus be distinguished, it must be admitted that they are based in the main on principles at variance with our present decision, but we are of opinion, as stated, and so hold, that on the case we have before us, where the Legislature, in the plain endeavor to comply with the constitutional limitation, has passed an act establishing a general statute for the establishment of these courts, applicable to more than one-half the counties in the State, the principle of the New York decision affords a better and wiser rule of interpretation, and must be allowed as controlling on the validity of the present law.

For the reasons stated, we are of opinion that the petitioner is held under a valid sentence of a competent court, and the judgment denying his application for release must be

Affirmed.

CLARK, C. J., concurring in result: It is well settled that a statute may be constitutional in part and unconstitutional in part. It is not necessary to cite authorities for this.

The amendment to the Constitution adopted in 1916, now Article II, section 29, prohibits local legislation on many subjects, among them "the establishment of courts inferior to the Superior Court," and requires that all legislation on the subjects named in that section shall be enacted by general laws. Laws 1919, ch. 277, entitled "An act to establish a uniform system of recorders' courts for municipalities and counties in the State," is in strict accordance with the amendment, and constitutional. It is a carefully prepared system, and by its terms applies to the whole State. It gives the same power to establish these courts in all of the 100 counties of the State.

But section 64 of said act, now C. S., 1608, which attempted to withdraw 44 counties from the provisions of the general act, is in violation of Article II, section 29, and unconstitutional and void.

The act here in question, Laws 1921, ch. 110, simply withdrew Iredell, Granville, and Cherokee from being among the 44 counties attempted to be excepted from the valid general act, Laws 1919, ch. 277, establishing a uniform system of recorders' courts.

As the provision excepting the 44 counties was unconstitutional, this act withdrawing these counties from the excepted class was a work of supererogation and unnecessary, but constitutional, and the recorder's court in Iredell is valid.

I do not understand that section 29, Article II, of the Constitution invalidates any local legislation, on any subject, which had been enacted prior to the adoption of the amendment.