CLYDE S. REED, L. D. MANEY AND J. T. ROBERTS, BOARD OF TRUSTEES OF THE EAST BILTMORE SANITARY SEWER DISTRICT v. HOWERTON ENGINEERING COMPANY.

(Filed 21 June, 1924.)

**1. Sanitation—Sewerage—Constitutional Law — Necessaries — Bonds — Taxation.**

Where, under the provisions of a statute to establish a county-wide system of sewerage according to districts, a district has been established and its lines defined: *Held,* sewerage as contemplated by the act is a necessary county expense, and bonds may be issued for the purposes of the district without submitting the question of their issuance to the voters of the district. Constitution, Art. VII, sec. 7.

**2. Same—Government—Boundaries—State Agencies—Statutes—Special Acts—Counties.**

> The courts may not declare a statute unconstitutional unless clearly and manifestly so: *and held,* where a statute authorizes the formation of sanitary sewerage districts within county-wide limits, the boundaries of these to be fixed by certain designated local authorities in a specified manner, and done without previous notice to the voters, the statute will not be construed as unconstitutional on that account, or as a "local, private or special act relating to health, sanitation," etc. Recent amendment to Constitution, Art. II, sec. 29.

THIS is a civil action tried before *Ray, J.,* at April Term, 1924, of BUNCOMBE. Appeal by defendant.

The material facts are:

This action was instituted in the Superior Court of Buncombe County to compel the defendant to comply with the terms of sale of $25,000 of sewer bonds issued on behalf of the East Biltmore Sanitary Sewer District, Buncombe County, North Carolina.

The East Biltmore Sanitary Sewer District was duly created pursuant to an act entitled "An act to create sanitary districts in Buncombe County, and describing their purposes and powers," being chapter 341, Public-Local Laws, 1923.

A petition was duly presented to the board of county commissioners, signed by J. P. Kitchin and 97 others, same being a majority (nearly all) of the qualified voters of such proposed sanitary sewer district, requesting the board of county commissioners to create the East Biltmore Sanitary Sewer District. The petition is as follows:

"Petition of a majority of the qualified voters under H. B. 1179, S. B. 730, ratified 1 March, 1923, to create a sanitary district in Buncombe County to be known as East Biltmore Sanitary Sewer District.

"To the Chairman and Commissioner of Finance and Board of Commissioners of the County of Buncombe:

"Gentlemen:—We, the undersigned, constituting a majority of the qualified voters of the proposed sanitary district, do hereby petition your board to create a sanitary district in said county to be known as 'East Biltmore Sanitary Sewer District,' said district to be created for the purpose of promoting the health of the community and especially of the proposed sanitary district, said sanitary district situate, lying and being in the county of Buncombe, State of North Carolina, in Asheville Township, east of the Asheville-Hendersonville Highway, and south of South Biltmore, and more particularly described as follows:" (The territory is described by metes and bounds.)

Pursuant to said petition, the Board of Commissioners of Buncombe County entered an order creating the territory described in said petition as the East Biltmore Sanitary Sewer District, and appointed Clyde

S. Reed, L. D. Maney, and J. T. Roberts as a board of trustees of said East Biltmore Sanitary Sewer District, the plaintiff in this action. The said board of trustees properly organized and adopted a resolution reciting that it is necessary for said district to build and construct a sanitary sewer system, and that in order to raise sufficient funds to build said sewer system it is necessary to issue negotiable coupon bonds in the sum of $25,000, said bonds to be the full, direct and valid obligations of said district, and to be payable, both principal and interest, out of special *ad valorem* taxes to be levied by the county commissioners upon all the taxable property embraced within the limits of said district. The bonds in question are being issued under sections 7 and 8 as direct obligations of the district, and payable out of *ad valorem* taxes.

The bonds were duly sold to the defendant at the price of par and accrued interest.

The defendant now refuses to accept and pay for said bonds, contending that the said bonds are illegal and void, and when delivered would not constitute the valid and binding obligations of said district, and would not be supported by an *ad valorem* tax to pay the principal and interest thereof. The defendant's contentions can be grouped that the said bonds are illegal and void:

1. That the said sewer system is not a necessary expense within the meaning of Article VII, section 7, of the Constitution, and the bonds are therefore illegal and void because they are not sanctioned by a majority of the qualified voters of said district.

2. That said bonds are illegal and void for the reason that no notice was given, nor opportunity afforded to the property owners whose property is affected by or included in said district, of a hearing on said matters, and that no hearing was had, and that the boundary lines of said district are not fixed by the General Assembly, but that the power to fix said boundary lines was delegated to a majority of the qualified voters of such proposed sanitary district who set forth a description of the territory to be embraced in the proposed sanitary district to the County Commissioners of Buncombe County.

3. That the said bonds are illegal and void for the reason that the act authorizing the same is a special and private act, and is prohibited by Article II, section 29, of the Constitution.

There is no controversy between the plaintiffs and the defendant as to the facts, nor is it contended by the defendant that the plaintiffs and the county commissioners have not complied with the provisions of the legislative act. No irregularities are alleged, and the sole questions presented to the Court are the three questions above set forth.

The matter was heard in the court below, and from a judgment declaring the bonds to be legal, valid and binding obligations, the defendant excepted, assigned error, and appealed to the Supreme Court.

*Chas. N. Malone for plaintiffs.*
*J. W. Haynes for defendant.*

CLARKSON, J. The first contention cannot be sustained. Article VII, section 7, of the State Constitution, is as follows:

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

This Court has uniformly held that a sewer system was a necessary expense within the meaning of the Constitution, and unless so prescribed by the Legislature, a vote of the majority of the qualified voters is not necessary. *Greensboro v. Scott,* 138 N. C., 181; *Bradshaw v. High Point,* 151 N. C., 517; *Underwood v. Asheboro,* 152 N. C., 641; *Gastonia v. Bank,* 165 N. C., 507.

The second contention cannot be sustained. The judiciary can only interfere with the legislative acts when those acts are in violation of the Constitution.

In *S. v. Perley,* 173 N. C., 790, it was said: "When a statute is assailed as unconstitutional, every presumption of validity should be indulged in its favor, and it should not be declared void except upon the clearest showing that it conflicts with the organic law. The conclusion that it is invalid should be unavoidable, and reached only after removing every reasonable doubt as to its incompatibility with the Constitution. Between the two there should be an irreconcilable conflict." *Coble v. Comrs.,* 184 N. C., 348; *S. v. Kelly,* 186 N. C., 377; *Person v. Doughton,* 186 N. C., 725.

*Allen, J.,* in *Skinner v. Thomas,* 171 N. C., 100, says: "The police power is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government. 6 R. C. L., 183. 'It is the power to protect the public health and the public safety, to preserve good order and the public morals, to protect the lives and property of the citizens, the power to govern men and things by any legislation appropriate to that end.' 9 Ency. of U. S. Reports, 473. 'Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property.' *Slaughterhouse cases,* 16 Wall., 36; 21 L. Ed., 394. The exercise of this power is left largely to the discretion of the law-making body, and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizens, or when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished. 6 R. C. L., 236."

The act in question providing for sewer districts in Buncombe County and the method is similar to the "Fence Law Acts," "Drainage Acts" and "Town and City Extension Acts," which have universally been held constitutional in this State. *Manly v. Raleigh,* 57 N. C., 370; *Cain v. Comrs.,* 86 N. C., 8; *Newsome v. Earnheart,* 86 N. C., 391.

In the *Cain case, supra* (Fence Law Act), *Smith, C. J.,* said: "We can scarcely conceive a case more clearly within the compass of the rule than that now under consideration. The general law requires a sufficient fence to be built and kept up around all cultivated land to protect it from the depredations of stock, at a very great and unceasing expense, becoming the more onerous as the material used in its construction becomes scarcer and more costly. The enactment proposed to dispense with separate enclosures for each man's land, and substitute a common fence around the county boundary to protect all agricultural lands from the inroads of stock from abroad, and the fencing in of stock owned within its limits. It creates a community of interest in upholding one barrier in place of separate and distinct barriers for each plantation, and thus in the common burden lessens the weight that each cultivator of the soil must otherwise individually bear. As the greater burden is thus removed from the landowner he, as such, ought to bear the expense by which this result is brought about. The social interest benefited by the law is charged with the payment of the sum necessary in securing the benefit. This and no more is what the statute proposes to do, and in this respect is obnoxious to no just objection from the taxed land proprietor, as it is free from any constitutional impediments."

In *Sanderlin v. Luken,* 152 N. C., 741, *Hoke, J.* (now *C. J.*), citing numerous authorities, said: "The power of the Legislature to create special-taxing districts for public purposes, separate and distinct from the ordinary political subdivisions of the State, such as counties, townships, etc., was declared and approved in the case of *Smith v. School Trustees,* 141 N. C., 143, and like power to create special assessment districts has been upheld by the Court in several well-considered decisions. . . . The principle has been frequently extended and applied to the creation of these drainage districts, and while certain statutes may have been declared void, this as a rule was because the rights of persons affected had not been in some way sufficiently safeguarded; and, so far as we have examined, the power of the General Assembly to enact legislation of this character has not been successfully questioned."

*Brown, J.,* in *Lutterloh v. Fayetteville,* 149 N. C., 69, said: "Consequently it follows that the enlargement of the municipal boundaries by an annexation of new territory, and the consequent extension of their corporate jurisdiction, including that of levying taxes, are legitimate

subjects of legislation. In the absence of constitutional restriction, the extent to which such legislation shall be enacted, both with respect to the terms and circumstances under which the annexation may be had, and the manner in which it may be made, rests entirely in the discretion of the Legislature. With its wisdom, propriety or justice we have nought to do. It has, therefore, been held that an act of annexation is valid which authorized the annexation of territory, without the consent of its inhabitants, to a municipal corporation, having a large unprovided-for indebtedness, for the payment of which the property included within the territory annexed became subject to taxation."

The third contention cannot be sustained. Article II, section 29, of the Constitution, is as follows: "The General Assembly shall not pass any local, private, or special act or resolution . . . relating to health, sanitation and the abatement of nuisance."

While the act may use the words "sanitary district," yet when taken as a whole it is not a local, private or special act relating to health, sanitation and the abatement of nuisance. The act does not state that its purpose is to regulate sanitary matters, or to regulate health or abate nuisances. A careful perusal of the entire act, and the entire act must be considered, clearly shows that the main purpose of the act and, in fact, the only purpose of the act, is to provide districts in Buncombe County wherein sanitary sewers or sanitary measures may be provided in rural districts.

Since the above amendments to the Constitution, which took effect 10 January, 1917 (1915, ch. 99), this Court has frequently declared acts similar to the one under consideration, constitutional. *Brown v. Comrs.,* 173 N. C., 598; *Mills v. Comrs.,* 175 N. C., 215; *Comrs. v. Pruden,* 178 N. C., 394; *Comrs. v. Bank,* 181 N. C., 347; *In re Harris,* 183 N. C., 633; *Kornegay v. Goldsboro,* 180 N. C., 446; *S. v. Kelly,* 186 N. C., 365.

In *Kelly's case, supra,* we said: "It was held in *Armstrong v. Comrs.,* 185 N. C., 405, that an act to authorize a county to build a hospital and issue bonds therefor is a special and local act, and prohibited under the prohibition of section 29 above, relating to health, sanitation, and the abatement of nuisances. In that case *Hoke, J.,* again distinguishes the earlier cases and affirms the ruling therein, largely on the ground that they dealt with what were necessary expenses of the county." We do not think the *Armstrong case, supra,* applicable to the case at bar.

"Nor do we think the law is subject to the objection that it is local or special. A law which applies generally to a particular class of cases is not a local or special law. *Hymes v. Aydolott,* 26 Ind., 431; *Palmer v. Stumph,* 29 Ind., 329." 15 L. R. A., 508.

We think the present act is one of great benefit to rural communities. With good roads in the State, many are moving from the crowded cities and towns to the country. Water and sewer is of great value to a home, and is a necessity. The expense is often more than the individual can afford, but a community or group, under the present law as applicable to Buncombe County, can all join in one sewer system and lessen the cost to the individual home owners. It is of vital importance to improve rural conditions and encourage, by every means possible, living conditions in the country. It was not the intention of the framers of the constitutional amendments and those who voted for them to prohibit such beneficent and constructive legislation applicable to an entire county.

For the reasons given, the judgment of the court below is

Affirmed.