BARNHILL, J., concurring.
DEVIN, J., dissenting.
SCHENCK and SEAWELL, JJ., concur in dissent.
Defendant, by warrant, was charged with the violation of the N.C. Real Estate License Act (chapter 292, Public Laws of N.C. 1937).
From a conviction in the recorder's court of the city of Charlotte, he appealed to the Superior Court. Upon the return of the jury therein with a verdict of guilty, defendant moved in arrest of judgment on the ground that said N.C. Real Estate License Act is unconstitutional. The judge below allowed the motion and entered an order arresting judgment, to which the State excepted, assigned error and appealed to the Supreme Court. The State is permitted to appeal "Upon arrest of judgment." C. S., 4649 (4).
The purpose of chapter 292, Public Laws 1937, is indicated by the title, "An Act to Define Real Estate Brokers and Salesmen; to Provide for the Regulation, Supervision and Licensing Thereof; To Create a Real Estate Commission, and Prescribing the Powers and Duties Thereof; To Provide for the Enforcement of Said Act and Penalties for the Violation Thereof." That the regulation of the trade sought was intended to be both extensive and intensive is apparent from sec. 9 of the Act, in which any one of eight types of misconduct, each *Page 164 
defined in broad terms, is made the basis for the revocation or suspension of a real estate broker's or salesman's license. The limit to which the Act goes in an effort to control the conduct of persons engaged in trading in real estate is shown by the following statement of purpose, taken from sec. 17 of the Act: "It is the purpose of this Act to provide for the regulation and discipline of real estate brokers and salesmen doing business within the State of North Carolina to the end that the interests and welfare of the people of said State shall be safeguarded by such regulations, and the fees herein charged shall be used by the commission for the enforcement of the provisions of this Act, and shall be in addition to any and all other privilege taxes, license fees or levies, whether made by the State of North Carolina or any county, city, or town, when the same are made under authority of law." In sec. 18, sixty-four counties out of the one hundred in the State are specifically exempted from the Act.
First. Is this Act constitutional? We think not.
The Constitution of North Carolina provides: "The General Assembly shall not pass any local, private, or special act or resolution. . . . regulating
labor, trade, mining, or manufacturing. . . . Any local, private or specialact or resolution passed in violation of the provisions of this section shall be void." Art. II, sec. 29 (Italics ours).
The leading legal definition of "trade" is that of Justice Bradley inMay v. Sloan, 101 U.S. 231, 237, as follows: "The word `trade,' in its broadest signification, includes not only the business of exchanging commodities by barter, but the business of buying and selling for money, or commerce and traffic generally." This is cited as the basic definition in 3 Bouvier, Law Dictionary, 3rd ed., p. 3290; Black's Law Dictionary, 3rd ed., p. 1744; and Ballentine's Law Dictionary, p. 1291. The same definition has been cited with approval by this Court in S. v. Worth, 116 N.C. 1007,1010, and Lewis v. Murray, 177 N.C. 17, 19, and a similar definition was followed by Douglas, J., in S. v. Hunt, 129 N.C. at p. 690. In S. v.Worth, supra, it was said, in part: "The word trade is . . . interpreted as comprehending not only all who are engaged in buying and selling merchandise but all whose occupations or business it is to manufacture and sell the products of their plants. It includes in this sense any employment or business embarked for gain or profit." The last sentence of this definition is quoted with approval by Allen, J., writing for the Court, inSmith v. Wilkins, 164 N.C. 136 (140). When so defined, we think that real estate brokers and salesmen, as defined by sec. 2 of the License Act here considered, are engaged in "trade" within the meaning of Art. II, sec. 29, N.C. Constitution. As was said in Finnegan v. Noerenberg, 52 Minn. 239,245, 53 N.W. 1150, *Page 165 
18 L.R.A., 778: "Giving a reasonably liberal meaning to the word `trade' in the Act, it would include the buying and selling of real estate. . . ." Accordingly, real estate brokers and salesmen being engaged in "trade," if the present act is a local, private, or special act, it is void.
In the case of In re Harris, 183 N.C. 633 (637), Hoke, J., for the Court, declared: "We are of opinion, as stated, and so hold, that on the case we have before us (a recorders' court act exempting forty-four counties), where the Legislature, in the plain endeavor to comply with the constitutional limitation, has passed an act establishing a general statute for the establishment of these courts, applicable to more than one-half the counties in the State, the principle of the New York decision affords a better and wiser rule of interpretation, and must be allowed as controlling on the validity of the present law." The New York rule referred to was there quoted from People ex rel. v. The Newburgh Plank Road Co., et al.,86 N. Y., 117, as follows: "A local act is one operating only in a limited territory or specified locality. It could not be said with propriety that a territory comprising nearly the whole State was merely a place or locality. An act operating upon persons or property in a single city or county, or in two or three counties, would be local. But how far must its operation be extended before it ceases to be local? To determine this, no definite rule can be laid down, but each case must depend upon its own circumstances." Tested by the rule of the Harris case, it is apparent that the present act applies to only a "limited territory" (the area occupied by only one-third of the counties) and to only "specified localities" (the geographical limits being limited to that encompassed by the boundaries of only thirty-six counties). The Harris case indicated the proper test, not of a public law, but of a "general" public law. That test, there applied, pronounced a law which exempted forty-four out of one hundred counties to be a valid, "general" law; that same test, here applied, pronounces a law which exempted sixty-four out of one hundred counties to be invalid as not constituting a "general" law. 25 R. C. L., "Statutes," secs. 65 and 66; S.v. Johnson, 170 N.C. 685 (692). The Harris case, supra, properly recognized that as to the particular types of legislation described in Art. II, sec. 29, of our Constitution, all legislative enactments are to be classified in one of the two classes: (1) "Local, private or special" acts which are "void." or (2) "general laws" which the General Assembly has "power to pass." The Harris case is likewise authority for looking beyond the mere form of an act to determine whether it is in fact a public, general law; this Court will look beyond such surface superficialities when there has been what Hoke, J. (In re Harris, supra) describes as "a palpable attempt to evade the constitutional restriction." Since such an act as the present *Page 166 
one can not, accurately, be said to be generally and usually applicable throughout the area comprising the State, necessarily follows that it falls within the class described by the words "local, private or special" acts. The plain, expressed requirement of our Constitution is the laws "regulating . . . trade" shall be "general laws"; the present act contravenes this constitutional mandate, and is, accordingly, "void." This Court would be remiss in discharging its proper function if it did not pronounce unconstitutional those acts of the General Assembly which plainly violate the basic, organic law of the Constitution; if it fails in this primary duty the fundamental guaranties of the Constitution become but vain delusions and that bed-rock charter of rights and duties rapidly disintegrates into, to quote Macaulay, "A thing to be appealed to by everybody and understood by everybody in the sense which suits him best."
Second. Is the N.C. Real Estate License Act, which applies to only thirty-six counties in the State, invalid as conflicting with the general State-wide policy of the current Revenue Act? We think that the act fails in this respect also.
Chapter 127, sec. 109, Public Laws of 1937, provides that real estate brokers and salesmen "shall apply for and obtain from the Commissioner of Revenue a State-wide license for the privilege of engaging in such business or profession." This same section of the Revenue Act regulates the license taxes required of attorneys, physicians, dentists, occulists, engineers, and the members of a number of other professions or trades. Chapter 292, Public Laws of 1937, attempts to impose a further license tax on real estate brokers and salesmen, declaring that the practice of the profession or trade without such additional license shall constitute a misdemeanor. It is this latter act which is here declared invalid.
The decision of this Court in S. v. Warren, 211 N.C. 75, narrowly limits the range of necessary, judicial inquiry in the instant case. In that case a real estate brokers' licensing act, similar to the present but applicable to only eleven counties, was declared unconstitutional. Although the majority opinion there adverted to the broader question as to whether such a licensing act falls within the permitted range of the police power (which question was expressly reserved for future determination), the realratio decidendi was that the act affected only a portion of the State and was in contravention of rights, granted on a State-wide basis, by the controlling general statute. In the Warren case, supra, at p. 79, it was stated: "Real estate dealers who have licenses from the State are not confined to any particular county in the State to do business. Attorneys at law, physicians, etc., are not confined *Page 167 
to any particular county to practice their professions in this State. Suppose certain counties would set up, as the present act does for real estate dealers, that attorneys at law, physicians, etc., could not practice their professions unless complying with the terms of a special act like the one in controversy, we would unhesitatingly say the act was unconstitutional — as we do in this case."
The opinion in the Warren case is controlling in the instant case. Decided cases should be regarded as weighty authority, at least within the Courts which decided them. As Broome puts it in that veritable storehouse of legal learning, Legal Maxims, "It is, then, an established rule to abide by former precedents, stare decisis, where the same points come up again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared and determined what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according to his private sentiments; he being sworn to determine, not according to his private judgment, but according to the known laws and customs of the land — not delegated to pronounce a new law, but to maintain and expound the old one — jus dicere et non jus dare." Legal Maxims, 8th ed., p. 147. Nor can it be argued that the Warren case is so recent that it may be disregarded without serious disturbance to the body of the law. "The mere lateness of time at which a principle has become established is not a strong argument against its soundness, if nothing has been previously decided inconsistent with it, and it be in itself consistent with legal analogies." Ibid., p. 152. The Warren case laid down the proposition that whenever the General Assembly has, by a general act of State-wide application, adopted a specific licensing policy to be applied uniformly throughout the State with respect to a particular occupation, a local act in derogation of the general act must fail. The reason for this rule is apparent; all acts of the same session of the General Assembly on the same subject are to be considered as one act (Wilson v. Jordan, 124 N.C. 683) and effect given to all provisions if this can be done upon any fair hypothesis (State Board v. Drainage District, 177 N.C. 222; Bank v.Loven, 172 N.C. 666) with the use of all reasonable means to arrive at the legislative intent (S. v. Partlow, 91 N.C. 550), but subordinate aims where inconsistent must yield to primary intent and local wishes must yield to general, State-wide policies. The soundness of this rule has been indirectly approved by statute sec. 397 (a), N.C. Code of 1935 (Michie); there it is provided that no act, purporting by its caption to be a public-local or private law, which attempts to repeal, alter, or change the *Page 168 
provisions of a public law, shall accomplish this purpose unless the very caption of the act expressly refers to the public law which will be affected by its provisions. There, as here, the necessity of safeguarding the field of public law against encroachments through local measures is clearly recognized.
The sound distinction recognized in the Warren case, supra — and one which we think determinative in the instant case — is that there is a vast difference between an act which places a like burden upon every member of a trade or profession in every county in the State and one which places a burden upon some members of a trade or profession who have a State-wide license but not upon all of them. This is peculiarly true of dealers in real estate, who, by the very nature of land, are confined largely to small, geographic areas with which they are familiar. The distinction is not merely one between general law and local law; the question is whether discrimination will be permitted among members of a trade or profession when all the members have previously been granted State-wide licenses to practice that trade or profession. A general and State-wide policy has been written into sec. 109 of the Revenue Act. The State has laid down specific requirements for a State-wide license to practice this trade or profession and the defendant has complied therewith and has been granted such license. Now, the General Assembly, by a law effective as to a limited area of the State, in effect revokes that license as to the particular areas involved. All real estate brokers in the State are required to pay the State privilege tax and all are subject to the same general laws in the conduct of their trade; yet, if the provisions of the instant act be upheld, a real estate broker who had paid his State tax would be deprived of the privilege of carrying on his trade in more than one-third of the counties in the State. For example, a broker seeking to sell a farm lying in two counties would be merely an honest business man conducting a legitimate business if the transaction were completed on one corner of the farm, but would be criminal if it were completed at another point on the same farm. The fatal shortcoming of the 1927 Real Estate Brokers' Act was not so much that it was a local act as it was that the act discriminated within a class, to wit: the real estate brokers licensed to do business throughout the State. In the words of Justice Field in SoonHing v. Crowley, 113 U.S. 703 (709): "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of laws." This statement, supported by similar views at other times from the *Page 169 
United States Supreme Court and this Court, was cited with approval byAdams, J., in S. v. Denson, 189 N.C. 173 (175). This fatal defect of the 1927 act is likewise present in the instant act; accordingly, the 1937 Real Estate Brokers' Licensing Act is found wanting when measured by the constitutional requisites set forth in S. v. Warren, supra.
In S. v. Divine, 98 N.C. 778 (783), Chief Justice Smith wrote: "An Act divested of any peculiar circumstance, and per se made indictable, should be so throughout the State, as essential to that equality and uniformity which are fundamental conditions of all just and constitutional legislation." In the same case, in which an act applicable to only twelve counties and making conduct, otherwise innocent, a misdemeanor, was declared unconstitutional. The statement of Justice Field that "No greater burdens should be laid upon one than are laid upon others in the same calling and condition" was quoted with approval. See Barber v. Connelly,113 U.S. 31. Likewise, in S. v. Fowler, 193 N.C. 290 (293), in which a criminal law changing the punishment in prohibition offenses committed in five counties was declared unconstitutional, Adams, J., wrote: "But the statute under consideration cannot be sustained on the ground that it was enacted in the exercise of the police power. The question is whether it shall supersede `the law of the land' — the general public law which was designed to operate without exception or partiality throughout the State." When the General Assembly, in a public measure, has laid down a controlling principle to be applied uniformly and generally throughout the length and breadth of the State in solving difficulties arising within a particular field of the law, local measures in contravention of that public measure must yield to the demands of the broader and more fundamental policy when an irreconcilable conflict appears. This principle is applicable with peculiar force when the public law in question indicates in express terms, as here, that the policy of the law involves its application, unimpaired, on a Statewide basis. Sound policy demands that when the General Assembly has adopted a general and uniform plan or policy to be applied consistently throughout the State, local measures which tend to disrupt or destroy that plan must yield to the more basic demands of general, State policy. The policy of the general "law of the land" prevails over that of a contrary, local act.
Cases, such as the instant case, in which the operation of the local measure would seriously impair or partially destroy the uniform and general application of a public law expressly designed for State-wide application, are not to be confused with those cases upholding local acts in those fields of the law in which no general, State-wide policy to the *Page 170 
contrary has been expressly adopted. Notable among the cases of the latter type are the cases of an earlier period dealing with the regulation of intoxicating liquors, such as S. v. Joyner, 81 N.C. 534; S. v. Stovall,103 N.C. 416; S. v. Barringer, 110 N.C. 525; S. v. Snow, 117 N.C. 778;Guy v. Commissioners, 122 N.C. 471; and S. v. Herring, 145 N.C. 418. Also to be noted are those cases, such as Intendant v. Sorrell, 46 N.C. 49, and S. v. Moore, 104 N.C. 714, which upheld local laws regulating the measuring to be used in the sale of agricultural products. Nor does the principle here expressed run counter to that line of cases, of an earlier period, dealing with a wide variety of subjects which, at the time of those cases, were considered matters properly subject to regulation by local laws. The following examples may be so characterized: S. v. Wolfe,145 N.C. 445 (education and schools); Broadfoot v. Fayetteville,121 N.C. 419 (stock running at large); S. v. Pendergrass, 106 N.C. 664
(sale of meat); S. v. Warren, 113 N.C. 683 (use of profanity); S. v.Jones, 121 N.C. 616 (payment of taxes); S. v. Sharp, 125 N.C. 628 (work on public roads); Lumber Co. v. Hayes, 157 N.C. 333 (cutting timber); S.v. Dawson, 189 N.C. 173 (ordinance requiring drivers' license of non-resident, as well as resident, drivers); and Reed v. Engineering Co.,188 N.C. 39, and Kenilworth v. Hyder, 197 N.C. 85 (creation of sanitary districts).
Nor was the decision of this Court in S. v. Lockey, 198 N.C. 551, contrary to what is here said. In that case the apparent conflict between two State-wide acts — the Revenue Act, and the Barbers' Act — was resolved by giving full effect to both acts, both being public acts expressive of general, State-wide policies. There the two acts standing together in pari materia were expressive of a single and State-wide policy; here there is but one act — the Revenue Act — setting forth a State-wide policy, the Real Estate Licensing Act (applicable to a relatively small area) being in conflict with the general act, and the policy set forth therein. Reference to the record and the briefs in theLockey case make it clear that what was said in that case related not to the question dealt with here, but to the application of the doctrine of estoppel against the State, with an incidental allusion to the amount of the fees charged as not being unreasonable. Likewise, nothing said in S. v.Lockey, supra, or in Roach v. Durham, 204 N.C. 587, with respect to the power of the General Assembly to fix reasonable classifications in police measures is applicable here, as neither of those cases turned upon the conflict of a local statute with a general statute; furthermore, both of those cases dealt with general acts which incorporated minor exceptions and the comments in those cases merely upheld the validity of such exemptions as being insufficient to render void acts which were otherwise valid. *Page 171 
The able brief for the State and the argument of amicus curiae were persuasive but not convincing.
For the reasons given, the judgment of the court below is
Affirmed.