STATE v. G. W. KELLY AND W. S. McDUFFIE.

(Filed 31 October, 1923.)

1. **Evidence—Demurrer—Criminal Law.**

   Where a defendant in a criminal action desires to except to the sufficiency of the evidence to convict him, his excepting, under our statute (C. S., sec. 4643), at the close of the State's evidence, and upon the overruling of his motion to nonsuit, excepting at the close of all the evidence brings his exception, to the Supreme Court on appeal, upon the sufficiency of the entire evidence to convict, and is the proper procedure for that purpose.

2. **Constitutional Law—Roads and Highways—Counties—Taxation.**

   It is within the legislative power to prescribe by what method the roads of a county shall be worked and kept in repair—whether by labor, taxation on the property, or by funds raised from license tax, or by a mixture of two or more of these methods, varying in different counties and localities, in accordance with the legally ascertained wishes of the people of each, subject to be changed by subsequent legislation not in violation of constitutional requirements.

3. **Statutes—Repeal—Conflicting Terms—Roads and Highways—Counties—Taxation.**

   Where a later public-local law is in part conflict with a former one, it repeals by necessary implication the parts of the former statute that are in irreconcilable conflict; and where the Legislature has provided a general system of taxation of a county for the support and maintenance of the county highways, the repealing clause applies to conflicting parts of a former statute relating to each of the separate road districts therein.

4. **Constitutional Law—Taxation—Bonds—Statutes—Contracts.**

   Where an earlier public-local law provides for taxation or a bond issue for the maintenance of highway districts within the county, and a later statute is passed providing in addition for the working of the roads for several days out of the year by all able-bodied men between certain ages, or, in lieu thereof, the payment of a certain sum of money, the later law does not impair the obligations of a contract and fall within the inhibition of our Constitution, but tends to increase the value of the road bonds issued under the provisions of the earlier statute.

5. **Constitutional Law — Municipal Corporations—Counties—Taxation—Bonds—Local Statutes—Special Statutes.**

   A public-local law applicable to the maintenance of the public highways of a county and authorizing taxation or issuance of bonds for this purpose, with certain specific supervision and control, is not such local or special act as falls within the inhibition of our Constitution (Art. II, sec. 29), where it does not affect the "laying out, opening, altering, maintaining or discontinuing" the then existing highways, etc.

6. **Constitutional Law — Taxation — Bonds — Elections — Special Tax—Statutes.**

   Authority may be given by the Legislature to a county to levy a special tax for road purposes upon the approval of its electors lawfully ascertained, to exceed the general tax limitation, by special or general acts. Const., Art. V, sec. 6.

**7. Constitutional Law—Taxation.**

The courts will not declare a statute invalid as unconstitutional unless it clearly appears to be so.

**8. Statutes—Taxation—Exemptions—Special Privileges.**

An exemption of any particular class of persons from a public duty, in this case, from working on the roads for a certain number of days of a year, or paying a certain sum of money in lieu thereof, will not be allowed by the courts unless clearly granted by statute not in conflict with any constitutional provision.

**9. Same—Counties—Roads and Highways.**

Where a general statute (C. S., sec. 3750) makes a justice of the peace one of the road supervisors of the county, and by another general statute exempts him from road duty, and a later public-local law relating to a particular county repeals these special privileges by providing an entirely different method for the supervision and management of its highways, and requires all able-bodied men between certain ages to work the roads a designated number of days a year or pay a certain sum in lieu thereof, a justice of the peace or another—a mail carrier in this case—cannot claim to be exempt therefrom when he falls within the general class of persons required to do this public duty, without statutory expressions to that effect.

CRIMINAL ACTION, tried before *Sinclair, J.,* and a jury, at May Term, 1923, of PENDER.

Appeal by defendants.

The facts are set forth in the case on appeal to this Court, and are as follows:

These were two indictments against the above-named defendants for failure to work the public roads in Caswell Township, Pender County, under chapter 322 of the Public-Local Laws of 1921, and tried before his Honor, *Sinclair, J.,* at May Term, 1923. By consent, the two cases were tried together, and for the purpose of this appeal it is admitted that each of the defendants was over the age of eighteen years and under the age of forty-five years; had been duly assigned to work the road in Caswell Township leading from the Battle Ground; were given more than three days notice to work said road on the 24th day of February, 1923, naming the place and hour of meeting, and the tool to be carried; that neither of the above-named defendants appeared and worked the said road on said day and date, nor paid the amount of money set out in the statute, nor did they work six days within the year 1923; the defendants claiming exemption by virtue of chapters 336 and 445 of the Public-Local Laws of 1913; and in addition thereto the said George W. Kelly claimed exemption for the further reason on account of his duties regarding the mail at Rooks; and the said W. S. McDuffie claimed exemption for the further reason that he was acting justice of the peace.

At this point the State rested, and the defendants moved for judgment under the Mason Act. Motion overruled, and defendants excepted.

It is admitted that, under chapters 336 and 445 of the Public-Local Laws of 1913, an election was held in Caswell Township, Pender County, in 1913; that $20,000 worth of bonds were voted and have been sold, and the money arising therefrom has been used on the roads of said township; that the commissioners of said county of Pender have levied a tax to pay the interest on said bonds, and a sinking-fund tax, being a tax on the property in that township, and on the polls, in addition to the general and special county road tax; that the tax was levied first in 1920, and has been levied each year since; that the defendants have paid this tax, which was assessed against them, and that chapters 336 and 445 of the Public-Local Laws were offered in evidence, and it is agreed they need not be copied in the record, but may be referred to from the books.

The defendant George W. Kelly testified as follows: "I am one of the defendants, and handle the mails from the train to the postoffice at Rooks twice a day, and every other day four times a day. I did not go to work the roads because I had to look after the mail and the trains. I did not offer to pay the money, and am not willing to pay it now. I went up and asked for an excuse, because I was working for the government. I put it on the ground that I was exempt. I have a contract for carrying the mail. They pay me a small salary. I was sick last winter with influenza, and my wife carried it then."

It is admitted that the defendant W. S. McDuffie was an acting justice of the peace in and for Caswell Township, in said county, at the time he was notified to work the road.

At the close of all of the evidence, each of the defendants renewed their motion for nonsuit, under the Mason Act. Motion denied, and each of the defendants excepted.

The court below charged the jury as follows:

"The two defendants, G. W. Kelly and W. S. McDuffie, are indicted for failure to work the road. The law presumes they are innocent until the State has satisfied you, beyond a reasonable doubt, that they are guilty of the offense charged. The State has indicted these defendants under this section of the law, which is a special law applying to Pender County, passed by the Legislature, and which it is your duty to go by when it is called to your attention: 'That it shall be the duty of the road commissioner of each township to lay off his township into such sections as he may deem best and expedient for the improvement and maintenance of the public roads of his township. In laying off such sections it shall be sufficient to fix the boundaries thereof in such intelligible way as will enable the public to ascertain the same, and such

sections may be described by referring to the several tracts of lands or farms composing the same. Said road commissioner, after dividing his township into sections, as aforesaid, shall make a report of such divisions to the Board of Commissioners of Pender County, and such report shall be filed of record and shall be *prima facie* evidence of the location of such boundaries and competent as such in the several courts of said county.

" 'The road commissioners of each township shall appoint a road overseer for each road section, and such overseer shall work the roads of his section under the direction of said commissioners, subject, however, to such rules as the Board of Commissioners of Pender County may make for working said roads. Said road overseers, subject to the provisions of this act, shall be vested with all the authority and power now given to road overseers under the general laws of the State. Said road overseers shall be required to devote six days work to his section each road year; and shall keep said roads in good repair, in so far as the labor and funds available under this act shall permit.

" 'Each road overseer shall make a report to the township commissioner within thirty days after his appointment of the number of able-bodied men within the ages of eighteen and forty-five years within his road section, together with the names of each, and all such men in said section shall be required under the provisions of this act to work on the public roads of Pender County six days in each year, and ten hours of good and faithful service shall constitute a day's work: *Provided, however,* that such persons liable to road duty may pay ten dollars per year in lieu of performing road work, payable five dollars on or before the first day of January and five dollars on or before the first day of July of each year: *Provided, however,* that for the year one thousand nine hundred and twenty-one such persons may pay five dollars on or before the fifteenth day of May and five dollars on or before the fifteenth day of October. All persons failing to pay said money on or before said dates shall be deemed to have waived their rights to pay such money in lieu of road work: *Provided, however,* that every person liable to road duty may pay to the overseer, on or before seven o'clock a. m. of the day on which he is summoned to work the sum of two dollars and be relieved from work on such day.'

"The State contends that these two defendants are liable to road duty under that special act of the Legislature of North Carolina. The court charges you that they are liable to render road duty, provided they have been properly summoned and notified to go. The court charges you that, in this court, under this act, it is the duty of every man between eighteen and forty-five years of age, who has been assigned to work the road, to work the road when he has been notified, and the fact that he may have

paid a road tax—a special road tax or a general road tax, authorized by the Legislature—does not exempt him from duty of working the roads, because this act of 1921 requires citizens to work the road, in addition to the tax they ought to pay. The matter of working the roads or paying taxes to build and maintain roads is only a part of that duty which every citizen owes to his government. The government has the right to require us to do our part toward maintaining government and government institutions whenever it devolves equally upon all. The court charges you that the road tax, or special tax, devolves equally upon all citizens, according to his ability to pay or the property he owns, and, therefore, the fact that he pays a road tax is no excuse for not working the road, under this act of 1921. The court charges you that the act of 1921, which I have just read you, applied equally to all citizens, requiring all citizens between the ages of eighteen and forty-five to work the road when duly notified.

"The court charges you that, upon the evidence in this case, the fact that Kelly may have had a contract to carry mail to the depot, backward and forth, does not constitute him an officer of the United States, but is simply a private contract for money, like he might make with anyone else, and you might make.

"The court charges you that a justice of the peace is not exempt from road duty. A justice of the peace is a citizen and owes his duty to the State to bear his burden equally with all other parties, although he occupies and enjoys the distinction of having that position. He owes the same duty that any other person owes.

"It is your duty to take the evidence and say what the truth is. You have no right, if you have any prejudice or private personal opinion whether a man ought to work the road and pay the tax—that is a matter with which you have nothing to do. Whether the law is right, or not, you have nothing to do. You are sworn to go by the law, and if the law requires a man to pay the road tax and work the road, the remedy is to get the Legislature to change the law. You cannot change it in the jury box. Take the case and say how you find it."

The jury returned the verdict of guilty as to both defendants, and the court fined each of the defendants two dollars and the costs. Defendants moved to set aside the verdict and for a new trial. Motion denied. From the judgment of the court the defendants excepted and appealed to this Court.

The defendant, appealing, group their exceptions and assign errors as follows:

"First and second exceptions: The court erred in refusing to grant the defendants' motion for judgment of nonsuit at the close of the State's evidence and at the close of all the evidence."

24—186

The other six exceptions are to the charge of the court and not setting aside the verdict and the judgment rendered. These exceptions are not set out in full, as we think all the legal questions involved are raised under the first and second exceptions.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Wright & Stevens for defendants.*

CLARKSON, J. "When, on the trial of any criminal action in the Superior Court, or in any criminal court, the State has produced its evidence and rested its case, the defendant may move to dismiss the action or for judgment of nonsuit. If the motion is allowed, judgment shall be entered accordingly; and such judgment shall have the force and effect of a verdict of 'not guilty' as to such defendant. If the motion is refused, the defendant may except; and if the defendant introduces no evidence, the case shall be submitted to the jury as in other cases, and the defendant shall have the benefit of his exception on appeal to the Supreme Court. Nothing in this section shall prevent the defendant from introducing evidence after his motion for nonsuit has been overruled, and he may again move for judgment of nonsuit after all of the evidence in the case is concluded. If the motion is then refused, upon consideration of all of the evidence, the defendant may except, and after the jury has rendered its verdict he shall have the benefit of such latter exception on appeal to the Supreme Court. If defendant's motion for judgment of nonsuit be granted, or be sustained on appeal to the Supreme Court, it shall in all cases have the force and effect of a verdict of 'not guilty.'" C. S., sec. 4643, known as the "Mason Act."

We think the defendants' first and second exceptions are the only ones necessary to be considered in determining this case. The questions involved are legal ones, arising on the undisputed facts as appear from the record.

The exceptions to the court's charge, and other exceptions, will be grouped, and we will consider the legal questions under the first and second exceptions of the defendants:

"The court erred in refusing to grant the defendants' motion for judgment of nonsuit at the close of the State's evidence and at the close of all the evidence."

Under our procedure (the Mason Act, *supra*), these were the proper motions for the defendant to make. We are of the opinion that, according to the facts, as appear from the record, the court made no error in refusing the motions and in the charge as given, and in refusing to set aside the verdict, and in the judgment rendered.

We will consider the legal questions. It is for the legislative department to prescribe by what method the roads shall be worked and kept in repair—whether by labor, by taxation on property, or by funds raised from license taxes, or by a mixture of· two or more of these methods; and this may vary in different counties and localities to meet the wishes of the people of each, and can be changed by subsequent legislatures. *S. v. Holloman,* 139 N. C., 648; *S. v. Bullock,* 161 N. C., 225; *S. v. Taylor,* 170 N. C., 695.

*Clark, C. J.,* in *S. v. Sharp,* 125 N. C., 634, says: "It is not a tax, but a duty, like service upon a jury, grand jury, special venire, military· service, or as a witness."

Chapters 336 and 445 of the Public-Local Laws of 1913 provided that, upon petition, the county commissioners should order an election in any township in Pender County to determine whether the roads of that township should be improved and should be provided for by a bond issue and taxation, or by taxation, or stay as they were, by public road duty. Section 5 of both of these acts provides: "That the moneys raised under the provisions of this act shall be expended under the supervision and control and upon ·the orders of the board of county commissioners for the making and maintenance of the public roads in such township; and after the collection of such tax or the sales of such bonds, as the case may be, no person in such township shall be liable to or required to do road duty." Chapter 445 was evidently passed to cure some defect in the first, as they are identical. An election was duly held in Caswell Township, where the defendants reside, under this act, and the bond issue and the tax were carried, the bonds were sold, the tax levied, the road superintendent was elected, and road work begun, etc.

It will be noted that the latter part of section 5 of both acts says: "No person in such township shall be liable to or required to do road duty.".

Under chapter 322 of the Public-Local Laws of 1921, section 4 says: "And all such men in said section shall be required, under the provisions of this act, to work on the public roads of Pender County six (6) days in each year," etc. Section 17 of the act says: "All laws and clauses of laws in conflict with this act to such extent are hereby repealed."

It will be seen that part of section 4 of Public-Local Laws, chapter 322, Laws of 1921, is in conflict with the latter part of section 5, chapters 336 and 445, Public-Local Laws of 1913. By this conflict this much of the Laws of 1913 is repealed by law of 1921 and leaves the law of 1921 in full force and effect, which requires and makes it mandatory for all men between the ages mentioned to work on the public roads of Pender County. "Where two statutes are thus in conflict and cannot reasonably be reconciled, the latter one repeals the

one of earlier date to the extent of the repugnance." *Commissioners v. Henderson,* 163 N. C., 120; *Road Commissioners v. County Commissioners,* at this term (*ante,* 202).

"Between the two acts there must be plain, unavoidable and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy." 36 C. L. P., p. 1074.

Every affirmative statute is a repeal by implication of a prior affirmative statute, so far as it is contrary to it, for the maxim is *Leges posteriores priores contrarias abrogant* (later laws abrogate prior laws that are contrary to them). *S. v. Woodside,* 31 N. C., 500; Black's Law Dictionary.

The law in Pender County with reference to public highways: See chapters 291 and 486, Public-Local Laws 1915; chapters 192 and 689, Public-Local Laws 1917; chapter 373, Public-Local Laws 1919.

In this confusion of multitudinous public-local laws in Pender County the General Assembly in 1921 came to legislate for the county as a unit, and in the conclusion of the act repealed all laws in conflict therewith. Thus it is, there can be no valid claim that the exemption from road duty in the townships adopting that act can remain in the law in the face of subsequent legislation.

The learned counsel for the defendants contended that "Chapter 322, Public-Local Laws of 1921, is unconstitutional, so far as it attempts to repeal chapters 336 and 445 of the Public-Local Laws of 1913, as impairing the obligation of a contract."

The Laws of 1921, before referred to, did not in any way repeal the former laws, under which the road bonds were issued, sold, etc., but only repealed so much of the law as exempted men from road duty and required all men between certain ages to work on the public roads of Pender County. Instead of impairing the obligation of a contract, it made the obligation stronger by getting more labor to make better roads—an additional security.

"The wisdom and the sense of justice of the framers of the Constitution of the United States are admirably reflected in that provision which prohibits any State from passing any 'law impairing the obligation of contracts.' This restraint upon the States is a permanent guaranty in behalf of the humblest citizen as well as the largest corporation." *Iowa Tel. Co. v. Keokuk,* 226 Fed., 82; 12 C. J., note, p. 987.

"An exemption from taxation does not confer a vested right, and it may, therefore, be modified or repealed by the Legislature, unless it had been granted under such circumstances that its repeal would impair the obligation of a contract." 12 C. J., p. 969, sec. 536.

"No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." State Const., Art. I, sec. 7.

It was contended by defendants' counsel that the Road Act of 1921 for Pender County was unconstitutional.

The Constitution (section 29 of Article II), among other things, provides: "The General Assembly shall not pass any local, private, or special act or resolution . . . authorizing the laying-out, opening, altering, maintaining or discontinuing of highways, streets, or alleys."

In *Brown v. Commissioners,* 173 N. C., 598, it was held that an act which showed that its primary purpose was to authorize the sale of bonds for road purposes in a single township, and to require the levying of a tax to pay the interest and the principal of the bonds, and appointing road commissioners to control the expenditure of the money and to supervise the work, was not within the prohibition of the foregoing section. The discussion in the opinion seems to limit the prohibition of special legislation only to those matters which, under the general law, could be as well done by local authorities as by the Legislature itself. Where, then, the general authority of a local governmental agency was defective in a particular case, and what is to be done could be done only with the authority of the Legislature, then the prohibition of section 29, above, does not apply. And, again, in a particular case, the bond issue being the direct legislation, the fact that it provides that the proceeds of the bonds are to be used for road purposes will not bring it within the prohibition of the constitutional amendment.

In *Mills v. Commissioners,* 175 N. C., 215, the Court sustained an act which empowered the commissioners of Iredell County to issue bonds, from the proceeds of which bridges were to be built over Catawba River jointly with the county of Catawba. In that case it was declared that the local legislation prohibited in section 29 refers to the building, maintenance and control of specified and designated highways, bridges, etc., and does not prevent legislation authorizing the raising of proper funds by the sale of bonds of the county *or by taxation therein* required for the public good, where the limit of taxation allowable to the county by the Constitution for ordinary State and county purposes may have been reached by the county in question. It is also said in the case that "It is now very well known that the limit of taxation allowable by the Constitution for ordinary State and county purposes has been very generally reached by the different counties in the State, and for any additional demands or unexpected emergency authority to exceed these limits can only be conferred by legislative enactment."

In *Martin County v. Trust Company,* 178 N. C., 26, it was held that a public-local act authorizing two adjoining counties by joint action to build and construct a bridge over a dividing stream as already surveyed and laid out, with an approach thereto in one of the counties, and for the purpose to issue bonds in given proportions, not to exceed the cost

of the work, and to levy a tax to pay interest on the bonds and provide a sinking fund, is not such local, private, or special legislation as is forbidden by the constitutional amendment (section 29), *the necessary part of the act being to authorize a special tax.* The Court, in that case, expressly approved what was said by *Hoke, J.,* in *Mills v. Commissioners, supra:* "It is well understood that our General Assembly, at session after session, was called on by direct legislation to authorize a particular highway or street, or to establish a bridge or ferry at some specified place. . . . And it was in reference to local, special, and private measures of this character that these amendments were adopted."

These cases were again cited and approved in *Commissioners v. Trust Co.,* 178 N. C., 170, in which case there was a public-local law creating a highway commission for Surry County, for the improvement of public roads, and the issuance of road bonds for that county. They were again approved, with reference to the issuing of bonds for road purposes in the county of Wilkes, in *Commissioners v. Pruden,* 178 N. C., 394, and in *Davis v. Lenoir,* 178 N. C., 668.

In *Commissioners v. Bank,* 181 N. C., 347, they were again approved in regard to the appointment of a highway commission in the county and authorizing them to issue bonds for building roads in the county.

In *Emery v. Commissioners,* 181 N. C., 420, they were again approved in reference to the construction of a State-line bridge.

In *Huneycutt v. Commissioners,* 182 N. C., 319, they were again approved in reference to a statute that abolished two road commissions in the county and gave to another board created by the same act entire control and management of the public roads and bridges in the county for working, repairing, maintaining, altering, and constructing such roads as were then in existence or which might thereafter be built.

*In re Harris,* 183 N. C., 633, these cases were again cited and approved in reference to the establishment of a recorder's court in Iredell County by amendment to C. S., ch. 27, subch. 4.

Applying the principle established by these cases to the act in question (chapter 322, Public-Local Laws 1921), we find that the act was enacted as a county-wide law, converting what had been theretofore a township system into a county system, with the intent to provide better roads for Pender County. This is apparent, both from the title of the act and that part of section 1 thereof which requires the Board of Commissioners of Pender County to elect a road commissioner for each township in said county for the purpose of carrying out the provisions of this act. The remainder of the act is taken up with defining the duties of the road commissioner for each township, among which duties was the appointment of a road overseer for each road section in his township. It then defines the duties of these road overseers, and also the

duties of those liable for road duty in each and all of the townships of the county. In section 15 of the act the county commissioners are required to levy annually a special tax of 5 cents, with the proceeds of the tax to be used for the maintenance of the public roads of Pender County. One-tenth of the taxes so collected shall be spent annually in each township of said county. These are the general features of this act. Nowhere in it is there any suggestion of the laying-out, opening, altering, maintaining, or discontinuing of particular highways. On the contrary, it is a general county scheme, carrying with it authority to levy a special tax, which could have been levied only by this special authority, when, too, the amended Constitution, in section 6 of Article V declares that this special approval of the General Assembly may be given by either special or general act.

"The total of the State and county tax on property shall not exceed fifteen cents on the one hundred dollars value of property, except when the county property tax is levied for a special purpose and with the special approval of the General Assembly, which may be done by special or general act: *Provided,* this limitation shall not apply to taxes levied for the maintenance of the public schools of the State for the term required by Article IX, section 3, of this Constitution: *Provided further,* the State tax shall not exceed five cents on the one hundred dollars value of property." Chapter 93, section 2, subsection 3, Public Laws, Extra Session 1920; State Const., Art. V, sec. 6.

Returning, however, to section 29 of Article II of the Constitution, the following cases which enforced that provision illustrate, we think, the distinction which sustains the act of 1921. The section prohibits the establishing or changing the lines of school districts by special legislation. This was applied to the creation of a school district, in *Trustees v. Trust Co.,* 181 N. C., 306; *Woosley v. Commissioners,* 182 N. C., 429; *Robinson v. Commissioners,* 182 N. C., 590; *Galloway v. Board of Education,* 184 N. C., 245.

The distinction, however, between laying out and defining a school district, and allowing a bond issue and a special tax in an existing district, is shown in *Paschal v. Johnson,* 183 N. C., 130; *Burney v. Commissioners,* 184 N. C., 274; *Coble v. Commissioners,* 184 N. C., 342; *Roebuck v. Trustees,* 184 N. C., 144.

It was held in *Armstrong v. Commissioners,* 185 N. C., 405, that an act to authorize a county to build a hospital and issue bonds therefor is a special and local act, and prohibited under the prohibition of section 29, above, relating to health, sanitation, and the abatement of nuisances. In that case, *Hoke, J.,* again distinguishes the earlier cases and affirms the ruling therein, largely on the ground that they dealt with what were necessary expenses of the county.

The school-district cases cited herein particularly illustrate the principle enunciated in *Brown v. Commissioners, supra.* The local authority, the county board of education, has ample power, under the general law—indeed, under the Constitution—to lay off and define the boundaries of school districts. Constitution, Art. IX, sec. 3; C. S., sec. 5469.

It may be a matter of interest to illustrate the importance of the decisions of the Court in forwarding the good-roads movement of the State. In *Brown v. Commissioners, supra,* the first case decided under the constitutional amendments, the bonds were used to aid in building two grade roads across the Blue Ridge Mountains into the "Lost Provinces"—the first grade roads in that part of the State. Both roads are of great scenic beauty and untold value to the mountaineers in carrying their produce to market. One leads through the beautiful Linville Gorge, from McDowell County to Avery County, and the other over the Blue Ridge Mountains into Mitchell County. This road goes through Gillespie Gap—the famous gap that the patriots, Sevier, Campbell, and Shelby, marched through with their troops on their way to Kings Mountain in Revolutionary days. It is history that these brave mountaineers and others surrounded Kings Mountain and captured and killed every Britisher and Tory under Colonel Ferguson, the trusted lieutenant of Lord Cornwallis, who was then at Charlotte, N. C. It is said that Ferguson fell from his horse with fifteen wounds and died on the battlefield. The battle was fought on the top of the mountain, on 7 October, 1780, and was one of the battles that did much to turn the tide of the Revolution. The United States Government has erected a monument on the top of the mountain to the American heroes who fought in the battle. The sequel was Yorktown.

The *Mills case, supra,* gave power to rebuild the bridges swept away by the unprecedented flood of July, 1916. The *Martin County case* held the bonds valid that helped build the bridge and approaches, some 3.86 miles, over the Roanoke River and swamp, connecting Martin and Bertie counties and opening up that section of the State. The *Emery case* related to the bridge over the Catawba River, connecting Mecklenburg County with York County, S. C. In all the decisions the importance to the localities could be shown. The culmination of these constructive decisions sustaining the legislative enactments is the present State-wide system of roads taken over and maintained by the State. The caption of this act is "An act to provide for the construction and maintenance of a State system of hard-surfaced and other dependable roads, and connecting by the most practical routes the various county-seats and other principal towns of every county in the State for the development of agriculture, commercial and industrial interests of the State, and to secure benefits of Federal aid therefor, and for other purposes." Public Laws 1921, ch. 2, amended by chapter 160, Public Laws 1923.

"The statute (Laws 1921, ch. 2, sec. 10, subsec. (b), and sec. 7) gives broad discretionary powers to the State Highway Commission in establishing, altering, and changing the route of county roads that are, or are proposed to be, absorbed in the State highway system of public roads; and where the commission, in pursuance of section 7 of the act, have, as required, posted at the courthouse door of a county a map, showing the proposed route and the county roads to be taken, the limitation of sixty days ·expressed in the statute is upon the time allowed the county to object; and a subsequent change made by the State Highway Commission in the proposed route prior to the time of building the highways is not reviewable by the court, in the absence of an abuse by the commission of the discretionary power conferred on it by the statute." *Road Commission v. Highway Commission,* 185 N. C., 56.

Under the State highway system, the State has taken over 6,050 miles of road, and the Legislature has authorized a bond issue of $65,000,000 to build and construct this State highway system. It is estimated that the State Highway Commission is now maintaining 5,763.20 miles of roads; 1,237.08 miles of hard-surfaced roads have been completed and are now let and under construction; 1,262.11 miles of dependable roads have been completed and are now let and under construction.

For the present fiscal year it is estimated that the State will collect at least $7,000,000 from automobile and gasoline tax (tax on gasoline, 3 cents a gallon). This revenue will be sufficient to pay the interest on the State highway road bonds; the maintenance of the State roads ($300 a mile the average to maintain the State roads before and after they are hard-surfaced and made dependable); the upkeep of the State Highway Commission; a sinking fund to retire the bonds, and surplus over. There is no tax on land. The automobile and gasoline tax carries the entire burden at the present time.

The people of Pender County, through their representatives in the Legislature, elected by them, passed this Road Act of 1921. We think, for the reasons given, the act is valid ·and not unconstitutional. The courts should be slow to declare an act of the Legislature unconstitutional, unless clearly so.

*Walker, J.,* said, in *S. v. Perley,* 173 N. C., p. 790: "When a statute is assailed as unconstitutional, every presumption of validity should be indulged in its favor, and it should not be declared void except upon the clearest showing that it conflicts with the organic law. The conclusion that it is invalid should be unavoidable, and reached only after removing every reasonable doubt as to its incompatibility with the Constitution. Between the two there should be an irreconcilable conflict."

The Pender County road law, which we are considering, requires all able-bodied men within the ages of eighteen and forty-five to work on

the public roads of Pender County six days in each year ($10 a year can be paid in lieu of road work). There are no exemptions in this road act.

G. W. Kelly, one of the defendants, handled the mail from the train to the postoffice at Rooks twice a day, and every other day four times a day. He was working for the Government. He had a contract for carrying the mail. They paid him a small salary. His wife carried the mail when he was sick with influenza. There are no exemptions in the general road law that extend to these particular defendants. C. S., 3807.

The case cited by defendants (*S. v. Womble,* 112 N. C., 862), does not apply to the facts in this case.

A mail carrier is indictable for carrying a concealed weapon. *S. v. Boone,* 132 N. C., 1107; *Groves v. Barden,* 169 N. C., 12.

C. S., 3806 and 3807, exempts the members of the board of supervisors. C. S., 3750, makes the justices of the peace of each township the board of supervisors.

The Pender County Road Act provides that the board of commissioners shall elect a road commissioner for each township in the county to carry out the provisions of the act. This road commissioner shall appoint a road supervisor, etc. An efficient road system is created for the county. The Pender County Road Act repeals all laws and clauses of laws in conflict with the act. The justices of the peace of each township could not be the board of supervisors under the Pender County Road Act. The provision appointing a road commissioner for each township is in conflict with the general road law and repeals the provision making justices of the peace of each township the board of supervisors in Pender County. *S. v. Woodside, supra; S. v. Perkins,* 141 N. C., 803.

Where an able-bodied male person between eighteen and forty-five years of age resides in this State and pursues a vocation for his income for an indefinite period, he is liable to road duty. *S. v. Johnston,* 118 N. C., 1188.

Section hands employed on railroads at regular wages are not thereby excused from working on public highway of county. *S. v. Cauble,* 70 N. C., 62.

Bar pilots, unless employed on same day, not exempt. *S. v. Craig,* 81 N. C., 588.

Section 8 of the act entitled "An act to provide better roads for Pender County" provides the punishment as follows: "Any person, after having been duly notified, who shall fail to appear at the time and place designated by the overseer, and shall fail and refuse to work, as herein required, on such public roads, shall be guilty of a misdemeanor and

shall be punished by a fine not exceeding fifty dollars ($50) or imprisoned not exceeding thirty (30) days."

The policy of the law is against special privileges or class legislation. All should bear equally the burden of government and perform alike the duties imposed. It is a government of equal rights and opportunities for all. An exemption to a special class or favored few is not looked upon with favor and should never be allowed, unless clearly granted by the legislative branch of our government and not in conflict with any constitutional provision on the subject.

The mail carrier, under the facts in this case, and the justice of the peace are not exempted under the law, and they must perform road duty like all the other male inhabitants of the county. The amount of fine was small, but the principle involved affected the county road system of the entire State.

There is no error in the judgment of the court below imposing a fine of $2 and cost on the defendants.

No error.