R. L. CARR AND W. D. TURNER, FOR THEMSELVES AND ON BEHALF OF ALL OTHER TAXPAYERS OF PITT COUNTY WHO MAY DESIRE TO MAKE THEMSELVES PARTIES TO THIS ACTION, v. J. L. LITTLE, J. E. WINSLOW, E. G. FLANAGAN, W. E. HOOKER, D. S. SPAIN, MRS. E. W. HARVEY, W. D. WHEDBEE, CONSTITUTING THE BOARD OF TRUSTEES OF THE GREENVILLE GRADED SCHOOL DISTRICT, AND D. M. CLARK, MAYOR; C. W. HEARNE, H. L. HASSELL, G. A. CLARK, P. L. CLODFELTER, R. E. SELLERS, Z. P. VANDYKE, F. J. ROBES, W. L. HALL, CONSTITUTING THE BOARD OF ALDERMEN OF THE TOWN OF GREENVILLE.

(Filed 21 June, 1924.)

**1. Schools—Taxation—Bonds—Statutes—Contstitutional Law—Estoppel.**

The Private Laws of 1903 created a school district coterminous with a city's limits or those which may thereafter be extended, giving the school authorities the power to permit children to go to the public schools who may reside outside of the corporate limits upon such terms as they may deem just and fair, and complied with the faith or credit clause of our Constitution, Art. VII, sec. 7, under the provisions of the statute, by submitting to the voters of the district, at an election duly and regularly held, the question of a special school tax, which was approved by them. Under later statutes the limits were extended beyond those of the town without authorization for the vote of the special tax and no election was held; and for nineteen years a special tax was also levied and collected for the additional or outlying territory, without protest or legal action taken by the taxpayers: *Held*, the voters' approval under the statute of 1903 was a sufficient compliance with the constitutional requirement; and the plaintiffs, in their action in behalf of themselves and other taxpayers, are estopped after nineteen years to question the constitutionality of the special tax levied and collected.

**2. Same.**

The Public-Local Laws of 1915, ch. 253, relating to the submission to the voters of the school districts in Pitt County the question of a special tax, is an enabling act, and has no application where the public schools were under a board of trustees and not a school committee.

**3. Statutes—In Pari Materia—Schools—Constitutional Law—Taxation—Bonds.**

A later statute, apparently in conflict with a former local one, will not be construed to repeal the local act for repugnancy when the two may be sustained by a reasonable interpretation to give effect to the legislative intent as gathered from the language employed; and where the school trustees, under the provisions of a later general act purporting to make uniform all general or local acts on the subject, have submitted the question of a special school tax or bond issue to the voters of a school district, and approved by them under the provisions of our Constitution, Art. VII, sec. 7, and the former local statute has also authorized the submission of this question to the voters: *Held*, construing the statutes *in pari materia*, a variance between them, with reference to the referendum and the body that issues the bonds, is immaterial and is a substantial compliance with the organic law.

**4. Same—Trustees.**

Construing *in pari materia* the Private Laws of 1903 and the Private Laws of 1911, relating to the issuance of special school-tax bonds for the district of Greenville, Pitt County: *Held*, the effect of the later act was to reduce the number of trustees for the district, and the constitutionality of the bonds issued under the facts of this case may not be successfully questioned.

THIS was a civil action for a perpetual injunction, heard, by consent of parties, before *Allen, J.*, at May Term, 1924, of PITT.

Appeal by plaintiffs.

The plaintiffs contend that they are residents and taxpayers of Pitt County, N. C. W. D. Turner resides in and owns property located within the corporate limits of the town of Greenville and within the territory referred to as the 1903 School District, and R. L. Carr resides and owns property located without the town of Greenville, but within the territory hereinafter referred to as the 1905 District. The defendants constitute, respectively, the Board of Trustees of the Greenville Graded School District and the Board of Aldermen of the town of Greenville.

(1) That by chapter 497, Public Laws of 1901, there was created a school district within the limits of the town of Greenville, known as "Greenville Graded School District No. 1." A school maintenance tax was authorized by said act, subject to a vote of the majority of the qualified voters of the district, which act was repealed by chapter 106, Private Laws 1903, entitled, "An act to establish a graded school in the town of Greenville."

(2) That the last-mentioned act, chapter 106, Private Laws of 1903, further provided that, subject to a favorable vote of a majority of the qualified voters within the town of Greenville, which vote was thereafter duly given in accordance with law at an election legally held, the

corporate limits of said town should constitute a school district for each race, under a board of trustees having general control and management of the schools therein, for the maintenance of which the board of aldermen was by said act authorized to levy a tax not exceeding 15 cents on the $100 value of property annually, which tax the board of aldermen has continued to levy and collect annually.

(3) That the General Assembly of North Carolina, at its regular session of 1905, passed an act entitled, "An act to extend and define the boundaries of the graded school district of the Greenville Graded Schools, and to amend chapter 106 of the Private Laws of 1903 establishing said schools," which act is chapter 132, Private Laws of 1905; that said act extended the boundaries of the graded school district so as to take in territory lying without the corporate limits of the town of Greenville; that said act did not require or make provision for a vote of electors upon the enlargement of said school district nor upon the question ·of the levy within the new territory of the tax theretofore voted and levied in the district created by the 1903 act, but did provide that in levying the taxes for support of said schools, the board of aldermen of the said town of Greenville should levy the same tax on all real and personal property within the boundaries of said school district, whether said property be within the corporate limits of said town or not; that no election has ever been held to secure consent of the voters within the portion of said alleged district lying outside the town limits as to whether a school maintenance tax should be levied upon their property outside such limits, notwithstanding which the board of aldermen has annually, since 1905, levied and collected, both within and without the corporate limits of the town of Greenville, but within the territory set forth in said act of 1905, a school maintenance tax, which tax outside of the corporate limits·of said town plaintiffs claim is levied and collected in violation of Article VII, section 7, of the Constitution; and the plaintiffs further claim that said act of 1905 is void and of no effect for the reasons herein stated.

(4) That the General Assembly enacted chapter 386, Private Laws 1911, by which law the provisions of said law of 1903, relative to the election of trustees of said district, were expressly amended, and by which same law the boundaries of the town of Greenville, as set forth in chapter 261, Private Laws of 1907, are enlarged by express amendment of said chapter 261, which amendatory act of 1911 did not purport to amend said act of 1905, but ignored the same.

(5) That by the passage of chapter 222, Private Laws of 1915, the General Assembly purported to amend said law by further extending the boundaries of said school district and by providing that the tax for maintenance voted in said district under the 1903 law should be

levied and collected upon all taxable property within the limits of the enlarged district without requiring or providing for any vote of electors to authorize the spread of said tax upon any territory within the alleged extensions outside of the limits of the town itself, as constituted in 1903; that no election within said extended territory was ever held, notwithstanding which a maintenance tax was levied by the board of aldermen for two or three years after 1915 upon the property within the purported enlargement set forth by said act of 1915, which tax upon said purported enlargement was thereafter abandoned, without litigation or adjudication by any court of the validity thereof, and has not since been levied or collected save within the territory set forth in the said act of 1905, as hereinabove stated, and such extensions are not now considered a part of the school district, notwithstanding that said chapter 222 has never been repealed or amended.

It is contended by plaintiff: That the only law in force under which said school district, whether it contains only the territory set forth in said act of 1903 or that set forth in the said act of 1905 or that set forth in the said act of 1915, is empowered to issue bonds are chapters 253, Public-Local Laws 1915, and 38, Private Laws 1921, Extra Session, the former of which authorized certain school districts in Pitt County, including the said districts, to issue bonds in the manner therein set forth, and the latter of which, repealing as it does chapter 53, Private Laws of 1921, which had also authorized bonds of said school district, authorized not exceeding $130,000 bonds thereof for erecting and equipping schoolhouses, and additional bonds for other purposes, in the manner therein provided; that the provisions of said chapter 253 and said chapter 38 are in many important particulars inconsistent with the provisions by which bonds may be issued under the authority of chapter 136, Public Laws 1923, under which said district proposes to issue its said bonds; that said chapter 136 does not operate to repeal either of said chapters 253 or 38, nor even to modify the same or either of them, and it should be read as silently excluding from its operation the matter of bonds issue of the said district which have been authorized by said chapters 253 and 38, which two last-named chapters have not been repealed or amended by any law, and constitute an exception to the operation of said chapter 136, as has been held in a similar case by the Supreme Court of North Carolina in *Felmet v. Comrs.,* 186 N. C., 251.

The plaintiffs prayed that the defendants and each of them be perpetually enjoined, etc.

The defendant, on the other hand, contends:

That the Greenville Graded School District was duly created by special act of the Legislature, being chapter 132, Private Laws 1905,

which act defendants are informed and believe, and therefore allege, it was duly within the power of the Legislature to pass, and that the extension of the boundaries of the then existing Greenville Graded School District was valid, and it was not necessary to submit the question of the extension to the voters of the territory to be included in the school district.

That if there should be any irregularity in the levy of the tax in such enlarged territory, which defendants deny, defendants expressly allege that such irregularity does not in any way affect the validity of the $200,000 School Building Bonds of the district sought to be enjoined by plaintiffs, for that the question of a vote upon said tax does not enter into the question of the validity of the formation of the district, and that even if there should be such irregularity in the levy of said tax, same has been validated by chapter 135, Public Laws 1923, and the said district is a body politic and corporate, the tax heretofore levied having been approved by a part of the said graded school district, and having been continuously levied and collected since 1905, and no court of competent jurisdiction having held said vote or said annual tax, or the establishment or organization of said district, to be invalid.

Defendants expressly allege that chapter 136 of the Public Laws of 1923 repeals chapter 132, Private Laws 1905, and also chapter 222, Private Laws 1915, and is the only law under which said election could be called or the said bonds issued.

That these defendants admit that the Board of Trustees of the Greenville Graded School District have authorized the issuance of the said bonds, and fixed the form thereof, and have ordered that said bonds be signed by said chairman and secretary of the board of trustees of said district, and that the coupons shall bear the signature of said secretary, all of which defendants are informed and believe, and therefore allege, is proper and in strict conformity with section 263, subsection (b), the said chapter 136, Public Laws 1923, being the law the defendants allege made and provided for school districts not coterminous with an incorporated city or town.

Defendants are further informed and believe, and therefore allege, that should the court hold that the bonds should have been voted under chapter 253, Public-Local Laws 1915, or chapter 38, Private Laws 1921, Extra Session, still the procedure followed in calling and holding of the election of 1 April, 1924, was a sufficient compliance with such laws, and that the will of the qualified voters of said school district has been duly ascertained, since there were registered for said election 987 voters, of which number 696 voted in favor of the issuance of the bonds and a levy of the tax in payment thereof, and 74 voters voted against the issuance of said bonds.

The court below rendered the following judgment:

"This cause coming on to be heard before me by agreement of counsel, and it appearing to the court that summons has been accepted by all of the defendants, and counsel having been heard, and all matters referred to in the complaint and answer having been duly presented to the court, the court finds as a fact:

"1. That the boundaries of the Greenville Graded School District are those boundaries mentioned and described in chapter 132 of the Private Laws of 1905.

"2. That chapter 253 of the Public Laws of 1915, and chapter 38 of the Private Laws of 1921, Extra Session, are repealed by chapter 136 of the Public Laws of 1923, and the Greenville Graded School District is duly authorized by said chapter 136, Public Laws of 1923, to issue the bonds in question.

"3. That the election of 1 April, 1924, having been duly called and held in accordance with section 263, subsection (b) of said chapter 136, Public Laws of 1923, by the Board of Aldermen of the town of Greenville, and a majority of the qualified voters of said district having voted in favor of the issuance of the bonds, the said election is in all respects valid, and when the bonds shall be issued by the board of trustees and executed as they may direct, and sold by them after due advertisement, same will be valid and binding obligations of the Greenville Graded School District.

"It is now, therefore, ordered, adjudged and decreed that the injunction prayed for by plaintiffs be and the same is hereby denied, and this action is dismissed. Plaintiffs will pay the costs."

The plaintiffs excepted to the judgment, assigned error, and appealed to the Supreme Court.

*J. L. Morehead for plaintiffs.*
*H. W. Whedbee for defendants.*

CLARKSON, J. This is an action begun by injunction to restrain the issuance of $200,000 of bonds of the Greenville Graded School District, and the levy of tax for payment thereof. We have set forth fully the material facts and the contentions of the parties, as this action is to test the validity of the bonds and a levy of tax to pay the principal and interest and also the levy of the maintenance tax within the territory referred to as the 1905 School District, which is now known as the "Greenville Graded School District," and in which district the vote was taken to issue the bonds now in dispute.

We will consider what territory composes the Greenville Graded School District: The Legislature of 1903 passed an act, chapter 106,

Private Laws, creating the Greenville Graded School District and defining the boundaries as being coterminous with the then town of Greenville. In 1905, by chapter 132, Private Laws, the boundaries of the district were extended to take in additional territory, such extension not being submitted to the vote of the people, though taxes have been levied therein continuously since 1905. In 1915, Private Laws, ch. 222, the boundaries were again extended to include additional territory, but no vote was taken on the extension and no tax has been levied in such additional territory since the first two or three years following 1915. The caption of this act is "An act to enlarge the boundaries of the Greenville Graded School District." The election of 1 April, 1924, was submitted to the voters residing in the territory as defined by the 1905 act and excluded the 1915 addition.

It will be noted that in chapter 106, Private Laws 1903, in which the vote was taken in accordance with Article VII, section 7, of the Constitution, establishing the graded school in the town of Greenville, section 12 says:

"That all children within the corporate limits of said town as now constituted, *or as they may be hereafter extended,* who are entitled to attend the public schools, shall be admitted into said graded schools free of charge: *Provided, always,* that the whites shall attend the schools provided for them and the blacks the schools provided for them: *Provided further,* that the board of trustees shall have power to admit the children to either of the said schools who reside outside of the corporate limits of said town upon such terms as they may deem fair and just."

"Sec. 13. That the corporate limits of said town shall constitute a school district for each race, *but the trustees of the graded school and the persons charged by law with the duties of locating and managing the various school districts in the county of Pitt may extend the boundary of the graded school districts so as to take in territory and people not included within the corporate limits of said town.* (Italics ours.) And the board of trustees may enter into negotiations with the school committee of the district in which the said graded schools are situated and the county board of education, looking to acquiring the title to the lands and the school buildings for the white and for the colored races belonging to said school committee, on such terms as may be agreed upon, and the sale of these buildings and the investment of the proceeds in the graded school buildings for such races respectively. And the said board of trustees shall have full power and authority to receive, use or hold any donations, gifts, devises and bequests made for either or both of said graded schools."

The act of 1905 extended the corporate limits of the school district to take in additional territory outside of the limits of the town of Greenville. The act says:

"Sec. 5. That the person or persons appointed to take the list of taxable property in said town and to collect the same shall also take the tax list and collect the taxes for the support of the schools in said graded school district and pay over the same to the town treasurer, to be by him disbursed according to law for the benefit of said graded schools.

"Sec. 6. That in levying the taxes for the support of said graded schools the board of aldermen of said town of Greenville shall levy the same tax on all real and personal property within the boundaries of said school district, whether said property be within the corporate limits of said town or not, and in levying said tax the valuation fixed by the State and county assessments shall be taken as the valuation of this assessment."

The Private Laws of 1915, ch. 222, construed in connection with Private Laws 1905, ch. 132, only enlarged the boundaries as set forth in the latter act, but did not in any way repeal the then existing district. The caption of the act says: "Enlarge the boundaries." After levying the tax, two or three years following 1915, the levy was abandoned in the enlarged territory; but for 19 years, without objection from any taxpayer until this suit, the tax has been levied and collected in the territory under the 1905 act.

The plaintiff, R. L. Carr, who resides and owns property in the territory of the enlarged corporate school limits of 1905, and W. D. Turner, who resides and owns property in the corporate limits of the town of Greenville, and on behalf of all other taxpayers, etc., are parties to this injunction proceeding. The $200,000 bond issue was voted on in this 1905 district.

Constitution of N. C., Art. VII, sec. 7, is as follows:

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The vote of the people, under Private Laws 1903, ch. 106, voted not only that the children in the corporate limits could get the benefit of the graded school, but provided in section 12 of the act "That all children within the corporate limits of said town as now constituted, *or as may be hereafter extended,* shall be admitted," and the method of admittance until the limits are extended, *"who reside outside of the corporate limits of said town upon such terms as they may deem fair and just."* This power was given to the board of trustees of the graded

school to fix the fair and just terms. When the school limits were extended, the maintenance tax was under sections 5 and 6, Private Laws 1905, ch. 132, made the same as the tax in the old corporate limits of the town of Greenville.

Under section 13, chapter 106, Private Laws 1903, again "May extend the boundary of the graded school district *so as to take in territory and people not included within the corporate limits of said town."*

The people of the town of Greenville voted, under Private Laws 1903, ch. 106, to establish the graded school and to levy the tax not only for children in the corporate limits of the town of Greenville, as then constituted, but for the children in the limits that might be thereafter extended. They further under the said act, voted that the trustees of the graded school, under agreement with the county school authorities, could extend the boundary of the graded school district so as to take in territory and people not included within the then school district—the corporate limits of the town.

We think that Article VII, section 7, of the Constitution, *supra,* has been substantially complied with. The vote taken under the act made the town of Greenville contract a debt not only for those children in the town but for those in the extended district when the district was enlarged by legislative act 1905, *supra,* or under 1903 act, sec. 13, by agreement of the Trustees of Graded School of Greenville with the legal authorities of the proper county school district. After 19 years payment of tax, without protest from any citizen or taxpayer, including plaintiffs, it is presumed that the law has been complied with and the taxpayers and citizens of the district are estopped to question the validity of the tax.

"As in original creation, the law will indulge in presumptions in favor of the validity of changes of boundaries. Thus after public acquiescence for a considerable period presumptions in favor of the regularity of proceedings to attach territory to a municipal corporation will be indulged, and this is true although irregularities which would have defeated the annexation, if action has been taken in time, appears. So, where territory is annexed under a law which is unconstitutional because special in its character, and the city exercised municipal functions over the new territory for a period of four years without objection, and its operations would be seriously interfered with by holding annexation void, it was held that the complainant would be estopped from urging invalidity of the annexation." McQuillan on Municipal Corporations, sec. 289 (see cases cited); 20 A. & E. Enc. Law (2 ed.), 1155, and cases cited.

We do not think that chapter 135, Public Laws 1923, entitled, "An act validating the organization of special school districts," from the

position we take in this case, has any application. It legalized and validated the elections held under Article VII, section 7, of the Constitution, in relation to school districts, proposed school districts or portions of school districts.

Public-Local Laws 1915, ch. 253, is an enabling act, "An act to authorize the Board of County Commissioners of Pitt County to order an election in certain school districts in said county to issue bonds for certain purposes." There is no limit in this act as to the amount of bonds to be issued. What the certain school districts were is not clearly stated, but as one of the conditions imposed by the act was a petition from the school committee of any public school district in the county of Pitt, and as the Greenville District was under a board of trustees and not a school committee, we do not think this act applies.

The General Assembly enacted chapter 386, Private Laws 1911, by which law the provisions of said law of 1903 relative to the election of trustees of said district was amended, and by which same law the boundaries of the town of Greenville, as set forth in chapter 261, Private Laws of 1907, were enlarged by amendment of said chapter 261, the mandatory act of 1911 did not purport to amend said act of 1905. We think, from the position we take, that these acts had the effect only of reducing the number of trustees of the district as now constituted, known as 1905 District.

Private Laws, 1921, ch. 53, is "An act to authorize the Greenville Graded School District to issue bonds in an amount not exceeding $200,000, for the purpose of funding certain indebtedness and for the purpose of building, equipping or enlarging graded schools and teachers' home in said district."

It may be noted that in this act the territory known as Greenville School District (referred to as the 1905 School District in this opinion), which has paid maintenance tax for 19 years without objection, is fully recognized. Section 1 of the act is as follows: "That for the purpose and benefits of this act, the provisions of all laws governing assessment of real and personal property, the levy and collection of municipal taxes, and the holding of municipal elections in the town of Greenville, shall be and are hereby extended to that portion of the Greenville Graded School District lying without the corporate limits of said town as fully as if the same lay within said corporate limits, and to such other additions to said Greenville Graded School District as shall be lawfully made; and that for the purpose of levying and collecting taxes for the purpose of this act, and in all elections to be held under this act," etc. This act is repealed by chapter 38, Private Laws, Extra Session, 1921.

With these laws on the statute books, the Legislature of North Carolina, Public Laws 1923, ch. 136, passed the school law, the caption and preamble of which is as follows:

"An act to amend the Consolidated Statutes and to codify the laws relating to public schools.

"Whereas the acts of the General Assembly relating to public education are for the purpose of aiding all the people, and especially school officials, in maintaining and conducting a system of public schools and in providing revenue for the same; and

"Whereas a great need is apparent for collecting all the laws relating to public education and codifying them in such a way as to set forth as clearly as possible the legal duties, powers, and responsibilities of the several officials, in order to give them and all other friends of public education a clearer conception of their duties in maintaining and conducting public schools in accordance with the needs of the people and the provisions of the Constitution: Now, therefore."

The word "officials" in the above preamble is defined by section 5 of the act in the case of a special charter district to be "the Board of Trustees."

We think that chapter 38, Private Laws 1921, Extra Session, should be construed *in pari materia* with chapter 136, Public Laws 1923. This latter act, although being designated a public act, treats with the private or special school acts of the State. In this respect we have the two acts, both relating to private or special school acts. The act of 1921 limits the bond issue to $200,000, the amount of bonds voted for under act of 1923 being $200,000. Both acts provide that they must mature in 30 years. Under the act of 1921 the discretion, as we construe the act, gives the authority to issue serial bonds. The act of 1923 provides for 30-year serial bonds. In conformity with Constitution, Art. VII, sec. 7, both acts provide that the bonds cannot be issued unless a majority of the qualified voters of the school district vote in favor of the issuance. The board of trustees under both acts have to petition for the election. The act of 1921 requires the petition to the county commissioners; that of 1923 to the governing body of the town, which is the Board of Aldermen of the town of Greenville. The main conflict in the two acts relate to the body that submits the bonds to the vote of the qualified voters in the particular school district and the body that issues the bonds. Under the 1921 statute, *supra,* no bonds were ever voted. In the interpretation of statutes, the spirit and reason of the law should prevail—"For the letter killeth, but the spirit giveth life." The legislative intent in both the laws of 1921 and 1923, *supra,* was to give the qualified voters an opportunity to vote for bonds for school purposes in the particular districts like the one under consideration.

To carry out this intent, the acts should be so construed, if possible, as to reconcile them and effectuate each. If there is any conflict, the latter one repeals the former *pro tanto* to the extent of the repugnancy.

It was said in *S. v. Kelly,* 186 N. C., 372: "Where two statutes are thus in conflict and cannot reasonably be reconciled, the latter one repeals the one of earlier date to the extent of the repugnance. *Comrs. v. Henderson,* 163 N. C., 120; *Comrs. v. Comrs.,* 186 N. C., 202. 'Between the two acts there must be plain, unavoidable and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy.' 36 C. L. P., 1074. Every affirmative statute is a repeal by implication of a prior affirmative statute, so far as it is contrary to it, for the maxim is *Leges posteriores priores contrarias abrogant* (later laws abrogate prior laws that are contrary to them). *S. v. Woodside,* 31 N. C., 500; Black's Law Dictionary."

In chapter 136, Public Laws 1923, sec. 378, the repealing clause is as follows: "All laws and clauses of laws, including all acts passed by the General Assembly of one thousand nine hundred and twenty-three in conflict with this act are hereby repealed."

We do not think the position here taken disturbs the principle laid down in *Felmet v. Comrs.,* 186 N. C., 251.

The only material conflict between the two acts is in reference to the referendum and the body that issues the bonds.

Laws of 1923, ch. 136, sec. 263, subsec. (b), is as follows: "In the case of special charter districts not coterminous with an incorporated city or town, the petition for the election shall be made by the board of trustees to the board of county commissioners, which board shall call, hold, and determine the result of the election as provided in this article, and the bonds shall be issued by the board of trustees: *Provided, however,* that in districts of the kind described in this subsection in which special school taxes are now levied by the principal governing body of a city or town situated within the district, the powers and duties conferred by this article on board of county commissioners shall be exercised and performed by said principal governing body. Bonds of districts of the kind described in this subsection shall be issued in the corporate name of the district if the district is incorporated, or in the corporate name of the board of trustees if the district is not incorporated."

This section must be construed with Private Laws 1903, ch. 106, establishing a graded school in the town of Greenville, and chapter 386, Private Laws 1911, reducing the number of trustees, etc. Under those acts, trustees were elected by the Board of Aldermen of the town of Greenville, and when their term expired it is provided that any

vacancy shall be filled by the board of aldermen, the governing body of Greenville. Subsection (b), *supra,* provides that the bonds of the district when the board of trustees (as in the present case) is not incorporated shall issue them "in the corporate name of the board of trustees if the district is not incorporated."

The facts in *Comrs. v. Prudden,* 187 N. C., 794, are different from this case, and that case is not in conflict with the case at bar.

We think that the procedure followed, in calling and holding the election of 1 April, 1924, was a sufficient and substantial compliance with the law, and that the will of the qualified voters of said district has been duly ascertained, since there were registered 987 voters, of which number 696 voted in favor of the issuance of the bonds and a levy of the tax in payment thereof, and 74 voters voted against the issuance of said bonds. We are of the opinion that the said election is in all respects valid, and when the bonds shall be issued by the board of trustees and executed as they may direct, and sold by them after due advertisement, same will be valid and binding obligations of the Greenville Graded School District in the territory that has been recognized for the last 19 years as the district, and taken in under the Private Laws of 1905, ch. 132.

We reach the same conclusion here as the court below—that the bonds are valid. The position here taken being, in our opinion, the law, the judgment of the court below is

Affirmed.